# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAMELA JULIAN, on her own behalf, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>vs.<br><br>SWIFT TRANSPORTATION, INC. and SWIFT TRANSPORTATION CO. OF ARIZONA, LLC<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT (FLSA), 29 U.S.C. §201, *et seq*.**

Plaintiff Pamela Julian, by and through her undersigned attorneys, hereby brings this Collective/Class Action Complaint on behalf of all others similarly situated, against Defendants Swift Transportation, Inc. and Swift Transportation Co. of Arizona, LLC ("Swift"), and alleges as follows:

## NATURE OF THE CASE

1. This is a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), arising out of Swift's failure to compensate its hourly, non-exempt trainee truck drivers ("Trainees") for work Swift suffers and permits them to perform for its own benefit as their employer.

2. Swift has employed Plaintiff and hundreds of other similarly situated employees in the United States as Trainees (collectively "Trainees" and/or "the Collective"). The Trainees work for 4-6 consecutive weeks on the road driving a long-haul truck, assisting their mentors with navigation, pre- and post-trip inspections, loading and unloading, and conducting business with short haul and local delivery

agents, among other things, and learning how to use the truck's complex controls, safety practices, and how to accurately report hours worked and conduct pre- and post-trip inspection for purposes of compliance with the federal Department of Transportation's ("DOT") regulations, among other things.

3. During this 4-6 week training period, Trainees essentially live on the truck and sleep in the truck's sleeper berth.

4. As a matter of policy and practice, Swift does not permit the Trainees to record their own time for payroll purposes. Rather, Swift has enlisted the mentors to record the Trainees' status during each hour of every 24 hour period as one of either: "on-duty," "driving," "off-duty," or "sleeping." It has also been Swift's policy and practice to pay Trainees by the hour only for time recorded as "driving" or "on duty." However, Swift routinely underreports the amount of time Trainees spend "driving" or "on duty." In addition, Swift has failed to compensate Plaintiff and the other Trainees for time spent "sleeping" in excess of 8 hours per day.

5. As a result of this policy and practice, Swift has failed to fully and accurately record and compensate Plaintiff and its other Trainees for all their hours worked, including overtime premium compensation. This uncompensated, off-the-clock work is integral and indispensable to the principal activities of the job because it is principally time spent driving, conducting safety procedures, assisting the mentor with navigation and apprising him or her of traffic congestion or dangerous conditions, and conducting pre- and post-trip inspections for regulatory purposes, among other tasks. Swift's policy and practice has deprived Plaintiff and the other members of the Collective of substantial wages they have earned and to which they are entitled.

6. Swift has required and/or suffered and permitted Plaintiff and its other Trainees to work well in excess of 40 hours per week, while at the same time not compensating them at an overtime premium rate of 1.5 times their regular rates.

7. During many workweeks, Swift has required and/or suffered and permitted Plaintiff and its other Trainees to work so many hours without compensation that their effective hourly rates dip below the federal minimum wage of $7.25 per hour.

8. By failing to maintain accurate records of all hours worked, failing to pay minimum wages, failing to pay overtime wages, and failing to pay wages for all hours worked, Swift has operated and continues to operate in violation of the FLSA.

9. Plaintiff, on behalf of herself and all others similarly situated, seeks compensation and credit for all unrecorded and uncompensated work time, including minimum wage, overtime, liquidated damages and/or all other relief permitted by law. Plaintiff also requests reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## I. JURISDICTION AND VENUE

10. The FLSA authorizes private rights of action to recover damages for violation of the FLSA's wage and hour provisions. 29 U.S.C. § 216(b).

11. This Court has federal question jurisdiction in this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA. The Court also has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), because the aggregated claims of the individual class members exceed a sum value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed Collective, on the one hand, and Swift, on the other, are citizens of different states.

12. Venue is proper under 28 U.S.C. §1391(b) and (c), because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District, Swift is a resident of this Judicial District, and Swift is incorporated in this Judicial District.

## II. PARTIES

13. Plaintiff, Pam Julian, is a resident of Huffman, Texas, in Harris County. Plaintiff worked as a Trainee for Swift from approximately January 2015 to February 2015.

14. Swift employed Ms. Julian as a Trainee and Ms. Julian held this same job position since she began working for Swift in January 2015. Ms. Julian's employment with Swift was terminated in February 2015.

15. The Collective Action members are persons who worked as Trainees for Swift in the United States at any time beginning three years before the filing of this Complaint, and/or the filing of consents to become party plaintiffs, plus additional time for periods of equitable tolling.

16. Swift Transportation, Inc. is corporation incorporated in Delaware, whose agent for service of process is the National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904

17. Swift Transportation, Inc. does business in the State of Delaware and nationwide, and at all relevant times has been engaged in the business of long-haul trucking, logistics, and ground transportation in the United States.

18. Swift Transportation Co. of Arizona, LLC is a limited liability partnership incorporated in Delaware, with several places of business in Delaware, whose agent for service of process is the National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904

19. Swift Transportation Co. of Arizona, LLC does business in the State of Delaware and nationwide, and at all relevant times has been engaged in the business of long-haul trucking, logistics, and ground transportation in the United States.

20. Throughout this Complaint, any reference to "Swift," "Defendant," or "Defendants" is intended to refer to all Defendants jointly.

### III.   FACTUAL ALLEGATIONS

21.   Swift is a multinational corporation that operates an international trucking terminal network, and provides long-haul transportation services and other logistics services throughout the continental United States, Mexico, and Canada, and in this Judicial District.

22.   Swift operates nearly 18,000 trucks, and its terminal network includes over 40 full-service facilities.

23.   Swift currently employs hundreds of Trainees in the United States. Trainees are assigned to drive a truck with a "mentor" trucker for 4-6 weeks.  All Trainees have shared a common job description.  The principal job duties of Plaintiff and the other Trainees has been to drive a truck, assist their mentors with navigation and operation of the truck, conduct pre- and post-trip inspections, communicate and conduct business with short-haul and local delivery agents, and load and unload cargo, among other things.  Trainees also must learn how to operate the truck's controls, learn safe driving practices, how to log hours of service and how to conduct pre- and post-trip inspections, among other things.

24.   The mentors also have typically instructed the Trainees regarding the driving of the truck, operating the truck's controls, the logging of hours of service for regulatory purposes, loading and unloading, and communicating with short-haul and local delivery agents, among other things.  The mentor has also been responsible for tracking the hours worked by the Trainees, and inputting that information into the computer timekeeping system located on the truck.

25.   Swift has paid its Trainees by the hour and has classified them as "non-exempt" employees who are entitled to minimum wage and overtime compensation as defined by the FLSA.

26.   Trainees typically spend 4-6 consecutive weeks on a truck with a mentor, and Plaintiff and the other Trainees have spent the entire period traveling from

trucking terminal to trucking terminal across the interstate highways, far away from home.

27. Trainees typically drive routes that take multiple days to complete. During a multi-day route, Swift requires that truck drivers and Trainees sleep in the truck's sleeper berth rather than in outside lodging.

28. Swift has assigned the mentors to keep track of their Trainee's hours worked, and to log their hours of service and status during each 24-hour period of work into the truck's computer system. The mentors classify the time of the Trainees as either "driving," "on duty," "off-duty," or "sleeping." This information is stored in Swift's "Omnitrac" database. It has been Swift's policy and practice that Trainees do not log their own hours, and Swift has instructed Trainees not to log their own hours.

29. It has been Swift's policy and practice to pay full-fledged truck drivers by the mile, but to pay Trainees by the hour (as opposed to a flat daily rate, as many other trucking companies pay their trainees).

30. It has also been Swift's policy and practice to pay Trainees only for time logged into the timekeeping system by the mentor as either "on-duty" or "driving," while not compensating them for time logged as "off-duty" or "sleeping." Swift has typically paid Plaintiff and its other Trainees approximately $10 per hour for time spent driving, and between $7 and $8 per hour for time spent on duty but not driving. Any time recorded for Trainees by mentors as "off-duty" or "sleeping" is uncompensated.

31. During the training program, Plaintiff and the other Trainees have typically had to be on-duty or driving for up to and over 12-14 hours per day, and up to and over 6-7 days per week. Trainees essentially live in the truck. They drive the trucks and have other obligations while not driving. For example, when their mentors are driving, the Trainees sit in the passenger seat, and must assist the mentor with navigation; assist the mentor in operating the truck's controls; keep their mentors

apprised of traffic congestion or dangerous traffic conditions; observe their mentor's driving techniques, maneuvers, and safety procedures; and track how their mentor makes wide turns and other types of turns. While "on-duty" outside the truck, Trainees must conduct pre- and post-trip inspections for regulatory purposes, clean the truck, gather safety equipment, stock the truck with supplies in the event that it gets stranded, and perform other miscellaneous tasks to ensure that the truck is road-worthy. Whether driving or not, the Trainees are "on-duty" during this time.

32. As a matter of policy and practice, Swift routinely records "sleeping" and "off-duty" hours for Plaintiff and the other Trainees in gross excess of the amount of time the Trainees actually spend sleeping and off-duty, in order to artificially lower the amount of compensable hours. Swift routinely records and compensates the trainees for far less than the 12-14 hours a day they regularly work.

33. The relevant federal regulation provides that sleep time in excess of 8 hours per day is compensable:

> "Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked." 29 C.F.R. § 785.22.

34. Despite recording "sleeping" time in excess of 8 hours per day, Swift has not compensated Plaintiff and the other Trainees for time spent "sleeping" in excess of 8 hours per day.

35. For example, the time records Plaintiff downloaded from the Omnitrac system (which were logged by her mentor) state that she spent up to 17 hours in a 24-hour period "sleeping." On many occasions, as many as 10 consecutive "sleeping" hours were logged in the middle of the day. Plaintiff recalls that her timekeeping records from her training period show, on average, approximately 16 hours of "sleeping" per 24 hour period.

36. In all, Plaintiff Julian estimates that Swift paid her approximately $250 per week, despite spending 12-14 hours per day "on-duty" or "driving" and working 6-7 days per week during the training program. This works out to approximately $3 per hour, well below the federal minimum wage of $7.25 per hour.

37. As a result of Swift's policy and practice of requiring and/or suffering and permitting its Trainees to work well in excess of 40 hours per week, while at the same time grossly under-reporting their "on duty" and "driving" hours, the effective hourly rates for Plaintiff and the other Trainees have routinely dipped well below the federal minimum wage rate of $7.25 per hour.

38. As a matter of policy and practice, Swift does not compensate its Trainees at an overtime premium rate of 1.5 times their regular rate for even those hours over 40 in a week that are recorded in the timekeeping system. As a result of this policy and practice, in tandem with Swift's policy and practice of grossly under-reporting the Trainees' "on-duty" and "driving" hours, Swift has also failed to pay its Trainees all the overtime wages they are owed.

39. Also as a result of its policy and practice of requiring and/or suffering and permitting its Trainees to work well in excess of 40 hours per week, while at the same time grossly under-reporting their "on duty" and "driving" hours, Swift has not compensated Plaintiff and the other Trainees for "gap time" hours in between the amount of hours actually reported and the amount of hours leading up to 40 that were actually worked per week.

## IV. COLLECTIVE ALLEGATIONS

40. Plaintiffs bring all counts herein as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and a proposed Collective of similarly situated employees defined as:

> "All individuals currently or formerly employed by Swift as a Trainee or other equivalent hourly position in the United States at any time from three years before the filing of this Complaint and/or the filing of consents to become party plaintiffs, plus additional time for periods of equitable tolling, through resolution of this action."

41. Plaintiff, individually, and on behalf of other similarly situated employees defined above, seeks relief on a collective basis challenging Swift's policy and practice of failing to compensate its hourly, non-exempt Trainees for work Swift suffers and permits them to perform for its own benefit, including overtime compensation. The number and identity of other similarly situated persons yet to opt-in and consent to be party-plaintiffs may be determined from the records of Swift, and potential opt-ins may be easily and quickly notified of the pendency of this action.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, et seq. FAILURE TO PAY MINIMUM WAGES

42. Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1-39.

43. At all times relevant to this action, Swift has been an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et seq*.

44. At all times relevant to this action, Plaintiff and the other Trainees have been "employees" of Swift within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

45. The FLSA requires that employers whose employees are engaged in commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce pay employees the minimum wage for all time worked. 29 U.S.C. § 206(a).

46. At all times relevant to this action, Swift has been subject to the requirements of the FLSA because it is an enterprise engaged in commerce and its employees are engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206(a)(1).

47. At all times relevant to this action, Plaintiff and the other Trainees have been entitled to the rights, protections, and benefits provided under the FLSA because they are engaged in commerce or employed in an enterprise engaged in commerce, within the meaning of the FLSA, 29 U.S.C. §§ 201, *et seq.*

48. The FLSA requires that Plaintiff and the other Trainees may not be employed for a workweek longer than forty (40) hours unless they are compensated for employment in excess of the forty (40) hours at a rate of not less than one and one-half times the regular rate at which they are paid.  29 U.S.C. § 207(a)(1).

49. At all times material herein, the federal minimum wage has been $7.25/hour.

50. Plaintiff and all similarly situated employees are victims of a uniform and company-wide compensation policy that systematically denies Trainees their statutorily mandated minimum wages.  Swift has failed to pay Plaintiff and the other Trainees the minimum wages required by 29 U.S.C. §§ 206 and/or 207 because it routinely under-reports their compensable time while suffering and permitting them to work 12-14 hour days, 6-7 days per week.  This uniform policy, in violation of the FLSA, has been applied to all Trainees employed by Swift throughout the United States.

51. For example, Plaintiff Julian estimates that during at least one week of her training program, she worked approximately 85 hours, while only being compensated $250.  This works out to an effective hourly rate of less than $3 per hour, well below the federal minimum wage of $7.25 per hour.

52. The Collective is entitled to the full statutory minimum wages required by 29 U.S.C. §§ 206 and/or 207 for all periods in which they worked for Swift in the three years preceding the filing of this Complaint, along with all applicable penalties, liquidated damages, and other relief.

53. Plaintiff and all similarly situated employees are victims of a uniform and company-wide compensation policy that systematically denies Trainees their statutorily mandated minimum wages. This uniform policy, in violation of the FLSA, has been applied to all Trainees employed by Swift throughout the United States.

54. Swift's conduct in under-reporting the compensable hours worked by Trainees like Plaintiff was willful. Swift did it to avoid paying minimum wages and the other benefits to which Drivers were legally entitled.

55. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Swift knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. Plaintiff and all similarly situated employees are therefore entitled to all damages equal for the limitations period beginning three years preceding the filing of this Complaint, plus periods of equitable tolling.

56. The FLSA provides that a private action may be brought by an employee or employees for the payment of federal minimum wages and for an equal amount in liquidated damages in any court of competent jurisdiction. 29 U.S.C. § 216(b). Moreover, Plaintiff may recover attorneys' fees and costs incurred in enforcing their rights. *Id*.

57. Employers subject to the FLSA must "make, keep, and preserve" accurate records of all hours worked and the wages, hours, and other conditions and practices of employment. 29 U.S.C. § 211(c). It is unlawful for any person to violate § 211(c). 29 U.S.C. § 215(a)(5).

58. 29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

59. Swift has failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiff and the other Trainees comprehensive statements accurately showing the hours they worked during the relevant time period.

60. Swift's record-keeping policy is inadequate and inaccurate because instead of allowing Trainees to track and report their own time accurately, it has enlisted their supervisors to inaccurately record the time for them.

61. Where an employer's records are inaccurate or inadequate, employees need only produce sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference in order to prove they were improperly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). If an employer is unable to rebut the reasonableness of this inference, the court may award damages to the employee, even if the result "be only approximate." *Id.*

62. The Collective is entitled to their minimum wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees. 29 U.S.C. § 216(b).

## COUNT II
### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, et seq. FAILURE TO PAY OVERTIME WAGES

63. Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1-60.

64. The FLSA requires that employers whose employees are engaged in commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce pay

employees overtime wages at one and one-half their regular rate for hours worked in excess of 40 hours during a workweek.  29 U.S.C. § 207.

65. Swift is subject to the FLSA because it is an employer whose employees are engaged in commerce and/or engaged in the production of goods for commerce.

66. Plaintiff and those similarly situated are covered by the FLSA because they are employees engaged in commerce and/or in the production of goods for commerce.

67. Swift has violated the FLSA by failing to pay Plaintiff and the other Trainees for all time worked, including overtime pay.  Swift has required and/or suffered and permitted its Trainees to perform work while at the same time failing to record all of these compensable hours.

68. Plaintiff and the other Trainees have regularly worked well in excess of 40 hours per week during the 4-6 week period performing tasks such as driving the truck, assisting their mentors with navigation and traffic safety, operating the truck's controls, loading and unloading, conducting pre- and post-trip inspections, cleaning the truck, observing their mentors as they drive the truck, learning how report working hours for regulatory compliance purposes and how to meet other regulatory requirements, and communicating with short-haul and local delivery agents, among other things.

69. Employers are also required to compensate employees for hours spent "sleeping" in excess of 8 hours per day.  The relevant federal regulation provides:

> "Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or

implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked." 29 C.F.R. § 785.22

70. In spite of routinely recording time spent "sleeping" for over 8 hours per day, Swift has failed to compensate Plaintiff and its other trainees at all for those hours it has recorded them "sleeping" in excess of 8 hours per day.

71. Plaintiff and all similarly situated employees are victims of a uniform and company-wide compensation policy that has systematically denied Plaintiff and the other Trainees their statutorily mandated overtime premium pay by grossly underreporting their compensable hours and maintaining a policy and practice of not paying an overtime premium of 1.5 times their regular rate even for those hours in excess of 40 per week that have been recorded. This uniform policy, in violation of the FLSA, has been applied to Plaintiff and the other Trainees employed by Swift throughout the United States.

72. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Swift knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. Therefore, Plaintiff and all similarly situated employees are entitled to all damages owed for the limitations period beginning three years preceding the filing of this Complaint, plus periods of equitable tolling.

73. Plaintiff and other similarly situated employees are entitled to recover an award in the amount of their unpaid overtime compensation.

74. Plaintiff and other similarly situated employees are entitled to recover an additional award of liquidated damages in an amount equal to the amount of unpaid overtime pay, and/or prejudgment interest at the applicable rate. 29 U.S.C. § 216(b).

75. Employers subject to the FLSA must "make, keep, and preserve" accurate records of all hours worked and the wages, hours, and other conditions and practices

of employment. 29 U.S.C. § 211(c). It is unlawful for any person to violate § 211(c). 29 U.S.C. § 215(a)(5).

76. 29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

77. Swift has failed to maintain records accurately, as required by the aforementioned statutes and regulations, and failed to furnish Plaintiff and the other Trainees with statements accurately showing the hours they worked during the relevant time period.

78. Where an employer's records are inaccurate or inadequate, employees need only produce sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference in order to prove they were improperly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). If an employer is unable to rebut the reasonableness of this inference, the court may award damages to the employee, even if the result "be only approximate." *Id*.

79. The Trainees are entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees. 29 U.S.C. § 216(b).

## COUNT III
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, et seq. FAILURE TO COMPENSATE FOR ALL HOURS WORKED

80. Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1-77.

81. The FLSA requires that employers whose employees are engaged in commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce pay

employees overtime wages at one and one-half their regular rate for hours worked in excess of 40 hours during a workweek.  29 U.S.C. § 207.

82. Swift is subject to the FLSA because it is an employer whose employees are engaged in commerce and/or engaged in the production of goods for commerce.

83. Plaintiff and those similarly situated are covered by the FLSA because they are employees engaged in commerce and/or in the production of goods for commerce.

84. The FLSA further requires that employers compensate employees for all straight time compensation at the employees' regular rate of pay for non-overtime hours worked leading up to 40 in a week, in addition to paying employees overtime wages at one and one-half their regular rate for hours worked in excess of 40 hours during the workweek.

85. Plaintiff and the other Trainees have regularly worked well in excess of 40 hours per week during the 4-6 week training program performing work such as driving the truck, being trained as to how to operate its controls, being trained as to how to report working hours for regulatory compliance purposes and how to meet other regulatory requirements, loading and unloading, and communicating with short-haul and local delivery agents, among other things.

86. At all times relevant to this action, Swift has engaged, and continues to engage, in a willful policy, pattern, or practice of requiring and/or suffering and permitting the Trainees to perform work without compensation, in the form of spending time and conducting activities for the benefit of Swift and that is an integral and indispensable part of the principal activities for which the Trainees are employed.

87. Employers are also required to compensate employees for hours spent "sleeping" in excess of 8 hours per day.  The relevant federal regulation provides:

"Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked." 29 C.F.R. § 785.22

88. In spite of routinely recording time spent "sleeping" for over 8 hours per day, Swift has failed to compensate Plaintiff and its other trainees at all for those hours it has recorded them "sleeping" in excess of 8 hours per day.

89. As a result, Swift has failed to compensate its Trainees for all hours worked, in violation of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a), and 29 C.F.R. § 778.315.

90. The Trainees are entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees. 29 U.S.C. § 216(b).

91. Plaintiff, on behalf of himself and the Collective, seeks recovery of his attorneys' fees and costs of action from Swift, as provided by the FLSA, 29 U.S.C. § 216(b).

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed Collective she seeks to represent in this action, requests the following relief:

(a) For an order certifying that all Counts in this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the Collective, apprising them of the pendency of this action, and permitting them to assert their FLSA claims;

(b) For an order equitably tolling the statute of limitations for the potential members of the Collective;

(c) For an order awarding Plaintiff and the Collective compensatory and statutory damages, including lost wages, earnings, and all other sums of money owed to Plaintiff and members of the Collective, together with interest on these amounts;

(d) For an order awarding Plaintiff and the Collective liquidated damages as provided under the FLSA;

(e) For an order directing Swift to identify, locate and restore to all current and former Trainees the restitution they are due for lost wages, earnings, and other sums of money, together with interest on these amounts.

(f) For pre- and post-judgment interest;

(g) For an award of reasonable attorneys' fees as provided by the FLSA;

(h) For all costs of suit; and

(i) For such other and further relief as this Court deems just and proper

       Respectfully submitted,

       */s/ Gary W. Aber*
       GARY W. ABER (#754)
       One Customs House, Suite 600
       704 N. King Street, P.O. Box 1675
       Wilmington, DE 19801
       (302) 472-4900
       gaber@gablawde.com
       *Attorney for Plaintiff Pamela Julian*
       *and the Proposed Collective*

Dated: December 29, 2015
Of Counsel:
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP,
Joshua Konecky, SBN 182897

Nathan Piller, SBN 300569
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
*Attorney for Plaintiff Pamela Julian*
*and the Proposed Collective*