Garrett W. Wotkyns (AZ SBN 025887)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
8501 North Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Tel:  (480) 428-0142
Fax: (866) 505-8036
gwotkyns@schneiderwallace.com

Joshua Konecky (CA SBN 182897)
Nathan Piller (CA SBN 300569)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel:  (415) 421-7100
Fax:  (415) 421-7105
jkonecky@schneiderwallace.com
npiller@schneiderwallace.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PAMELA JULIAN, on her own behalf, and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>SWIFT TRANSPORTATION, INC. and SWIFT TRANSPORTATION CO. OF ARIZONA, LLC,<br><br>     Defendants. | Case No.: 2:16-CV-00576-ROS<br><br>**REPLY MEMORANDUM ISO PLAINTIFF'S MOTION TO FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(b)**<br><br>Judge: The Honorable Roslyn O. Silver<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

I.   INTRODUCTION .......................................................................................................1

II.  ARGUMENT.............................................................................................................2

    A.  Swift misapplies the lenient standard at the first stage by suggesting
        Plaintiffs must pass a "rigorous" test and meet a "higher standard of
        proof"      2

    B.  Swift concedes that the policies at issue are common across the
        Collective      3

    C.  Swift's common defenses present bona-fide legal disputes that can be
        decided for all Trainees in one stroke      4

    D.  Plaintiff's position on the merits is well-supported by law and regulation      6

    E.  Plaintiff's substantial allegations of Swift's unlawful pattern and
        practice more than meet the lenient standard at phase one      10

    F.  Even the limited discovery to date indicates that proving liability and
        damages on a class basis will be manageable      13

    G.  Swift's handpicked Trainee declarants make up just 0.02% of the
        collective, and their declarations are of little evidentiary value at this
        stage      14

    H.  The nature of the Trainees' profession makes notice by e-mail
        appropriate      15

    I.   Equitable tolling is necessary to preserve claims      15

III. CONCLUSION............................................................................................................16

1

## TABLE OF AUTHORITIES

2

3

**Federal Cases**

4

*Adams v. Inter-Con Sec. Sys., Inc.*

5

242 F.R.D. 530 (N.D. Cal. 2007) ...............................................................16

6

*Ashcroft v. Randel*

7

391 F. Supp. 2d 1214 (N.D. Ga. 2005) ......................................................16

8

*Barrera v. US Airways Grp., Inc.*

9

2013 WL 4654567 (D. Ariz. Aug. 30, 2013) ........................................ 2, 11

10

*Barrus v. Dick's Sporting Goods Inc.*

11

465 F.Supp.2d 224 (W.D.N.Y. 2006) ..........................................................4

12

*Beauperthuy v. 24 Hour Fitness*

13

2008 WL 793838 (N.D. Cal. Mar. 24, 2008) .............................................11

14

*Benedict v. Hewlett-Packard Co.*

15

2014 WL 587135 (N.D. Cal. 2014).............................................................3

16

*Bublitz v. E.I. DuPont de Nemours and Co.*

17

196 F.R.D. 545 (S.D. Iowa 2000) ..............................................................14

18

*Butler v. DirectSAT USA, LLC*

19

876 F. Supp. 2d 560 (D. Md. 2012) ...........................................................15

20

*Campbell v. C.R. England, Inc.*

21

2015 WL 5773709 (D. Utah Sept. 30, 2015) .......................................... 5, 6

22

*Chao v. Pacific Stucco, Inc.*

23

2006 WL 2432862 (D. Nev. Aug. 21, 2006) ..............................................11

24

*Colson v. Avnet, Inc.*

25

687 F. Supp. 2d 914 (D. Ariz. 2010)....................................................... 2, 12

26

*Creely v. HCR Manor Care, Inc.*

27

789 F. Supp.2d 819 (N.D. Ohio 2011) .......................................................14

28

*Cunningham v. Gibson Elec. Co.*

43 F. Supp.2d 965 (N.D. Ill. 1995) ...................................................................11

*England v. New Century Fin. Corp.*

370 F. Supp. 2d 504 (M.D. La. 2005) ......................................... 5, 6, 12

*Escobar v. Whiteside Constr. Corp.*

2008 WL 3915715 (N.D.Cal. Aug. 21, 2008) ...........................................13

*Felix v. Davis Moreno Constr., Inc.*

2008 WL 4104261 (E.D.Cal. Sept. 3, 2008) ............................................12

*Fowler v. Incor*

279 F. App'x 590 (10th Cir. 2008) ...........................................................10

*Gilbert v. Citigroup, Inc.*

2009 WL 424320 (N.D.Cal. Feb. 18, 2009) .............................................13

*Gomez v. H & R Gunlund Ranches, Inc.*

2010 WL 5232973 (E.D. Cal. Dec. 16, 2010) ..........................................12

*Graham v. Overland Sols., Inc.*

2011 WL 1769737 (S.D. Cal. May 9, 2011) ..............................................2

*Guifu Li v. A Perfect Fran., Inc.*

2011 WL 4635198 (N.D.Cal. 2011) ...........................................................3

*Jenson v. Eveleth Taconite Co.*

139 F.R.D. 657 (D. Minn. 1991) ..............................................................14

*Kress v. PricewaterhouseCoopers, LLP*

263 F.R.D. 623 (E.D. Cal. 2009) ................................................................3

*Kellgren v. Petco Animal Supplies, Inc.*

2015 WL 5167144 (S.D. Cal. Sept. 3, 2015) .............................................4

*Lambert v. Ackerley*

180 F.3d 997 (9th Cir. 1999) ......................................................................7

*Lewis v. Wells Fargo & Co.*

 669 F. Supp. 2d 1124 (N.D. Cal. 2009) ...............................................14

*Leyva v. Medline Indus. Inc.*

 716 F.3d 510 (9th Cir. 2013) ...............................................................14

*Lujan v. Cabana Mgmt., Inc.*

 2011 WL 3235628 (E.D.N.Y. July 27, 2011) ......................................15

*Martin v. Funtime, Inc.*

 792 F. Supp. 539 (N.D. Ohio 1991) .....................................................11

*Mevorah v. Wells Fargo Home Mortg., Inc.*

 2005 WL 4813532 (N.D. Cal. 2005) ....................................................14

*Morden v. T-Mobile USA, Inc.*

 2006 WL 2620320 (W.D. Wash. Sept. 12, 2006) .......................... 12, 14

*Morgan v. Family Dollar Stores, Inc.*

 551 F.3d 1233 (11th Cir. 2008) ........................................................ 2, 11

*Nance v. May Trucking Co.*

 2013 WL 10229756 (D. Or. 2013) ...................................................... 6, 9

*Otey v. CrowdFlower, Inc.*

 2013 WL 4552493 (N.D. Cal. Aug. 27, 2013) .....................................15

*Petrone v. Werner Enterprises, Inc.*

 2017 WL 510884 (D. Neb. Feb. 2, 2017) ...................................... 5, 8, 15

*Punter v. Jasmin Intern. Corp.*

 2014 WL 4854446 (D.N.J. 2014) ...........................................................8

*Rehwaldt v. Elec. Data Sys. Corp.*

 1996 WL 947568 (W.D.N.Y. March 28, 1996) ...................................12

*Schiller v. Rite of Passage, Inc.*

 2015 WL 4916932 (D. Ariz. Aug. 18, 2015) .........................................5

*Senne v. Kansas City Royals Baseball Corp.*

  2015 WL 6152476 (N.D. Cal. Oct. 20, 2015) ....................................................15

*Simmons v. T-Mobile USA, Inc.*

  2007 WL 210008 (S.D. Tex. Jan. 24, 2007) ......................................................12

*Slack v. Swift Transp. Co. of Arizona, LLC*

  2013 WL 6095548 (W.D. Wash. 2013) ...............................................................5

*Stickle v. SCIWestern Mkt. Support Ctr., L.P.*

  2008 WL 4446539 (D. Ariz. Sept. 30, 2008) ....................................................16

*Torres v. Transguard Ins. Co. of Am. Inc.*

  2014 WL 3362124 (D. Ariz. June 20, 2014)........................................................5

*Troy v. Kehe Food Distributors, Inc.*

  276 F.R.D. 642 (W.D. Wash. 2011) ...................................................................13

*Tyson Foods, Inc. v. Bouaphakeo*

  136 S. Ct. 1036 (2016) .......................................................................................14

*Walling v. Portland Terminal Co.*

  330 U.S. 148 (1947) ..............................................................................................9

*Williams v. Strickland*

  87 F.3d 1064 (9th Cir. 1996) ................................................................................9

**Federal Statutes and Regulations**

29 C.F.R. § 785.13.................................................................................................11

29 C.F.R. § 785.22....................................................................................... passim

29 C.F.R. § 785.22(a) .............................................................................................4

29 C.F.R. § 785.27................................................................................................10

29 C.F.R. § 785.28................................................................................................10

29 C.F.R. § 785.41....................................................................................... passim

29 U.S.C. § 216(b)........................................................................... i, 1, 2, 16

**Other Authorities**

3 Emp. Coord. Compensation § 20:246 ...................................................................9

Department of Transportation Field Op. Handbook, Ch. 31, 31b09(a) ..............................8

U.S. Department of Labor, Wage & Hour & Public Contracts Division Advisory

  Opinion Op. 25 BA 302.5 (November 18, 1966)................................................................7

U.S. Department of Labor, Wage & Hour & Public Contracts Division Advisory

  Opinion 25 BA 407.8 (February 17, 1964) .......................................................................7

## I.   __INTRODUCTION__

Swift does not dispute that the key policies at issue are the same across the proposed collective, but instead relies on the premature merits argument that these uniform policies are lawful.  Swift's contentions on the merits are flawed.  For example, the plain text of the applicable Department of Labor (DOL) Regulations show that the time Trainees spend cabined in the passenger seat of a moving truck is compensable.  Similarly, Swift's position with respect to Trainees having more than eight hours of uncompensated sleeper berth time per day conflicts with the DOL Regulations and interpretive guidance.  For all Plaintiff's facial challenges, however, the important point is that Swift's arguments are for the merits, not conditional certification.  Indeed, the courts have held that analogous disputes as to a trucking company's compliance with the very same DOL Regulations at issue here are appropriate for class treatment.  Even the most recent case cited by Swift refused to decertify an analogous class under the more rigorous class certification standard under Rule 23.

Swift's contentions with respect to the pattern and practice claims are similarly premature.  There are numerous examples of courts in this Circuit conditionally certifying off-the-clock claims under the FLSA based on significantly less detailed factual allegations and fewer declarations from the putative collective.  Moreover, courts in the Ninth Circuit simply do not require a showing of "interest" or "support" at the conditional certification stage.  Indeed, such a requirement would present a nearly impossible hurdle to clear, as all but a very few employees would even have reason to know about the litigation or their potential claims until the Court facilitates notice under 29 U.S.C. § 216(b).  This is the whole point of the § 216 notice process in the first place.  Swift's contrary approach puts the cart before the horse; it also conflicts with the broad, remedial provisions of the FLSA.

Finally, Swift's PMK designee witnesses have identified common sources of proof, such as Swift's own compliance audits and timekeeping data, which will make both liability and damages manageable (trial manageability and differences in damages are no grounds to deny conditional certification anyhow.)  These data show when and for how long Trainees perform

productive tasks while logged as "sleeper berth" or "off-duty," all instances in which more than eight hours of "sleeper berth" time was logged in a 24 hour period, and when Trainees' time was logged as "off duty" while they rode in a moving truck.  This source of common proof provides one more reason the Court should grant Plaintiff's motion for conditional certification and to facilitate notice under 29 U.S.C. § 216(b).

## II.   ARGUMENT
### A. Swift misapplies the lenient standard at the first stage by suggesting Plaintiffs must pass a "rigorous" test and meet a "higher standard of proof"

As this Judicial District has recognized, a plaintiff's burden at the initial notice stage of an FLSA collective action "is low." *Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1189 (D. Ariz. 2014). The standard for determining similarity at the initial stage has been described as "not particularly stringent," "fairly lenient," "flexible," "not heavy" and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-1261 (11th Cir. 2008) (citations omitted).  "Given this light burden, motions to conditionally certify a class for notification purposes are typically granted." *Villarreal*, 66 F. Supp. 3d at 1189 (internal citations omitted).

A "more rigorous standard is only applicable" where the factual record is sufficiently complete to compare the factual settings of individual plaintiffs. *Graham v. Overland Sols., Inc.*, 2011 WL 1769737, at *3 (S.D. Cal. May 9, 2011).  This typically occurs "at or close to the completion of discovery," *Barrera v. US Airways Grp., Inc.*, 2013 WL 4654567, at *3 (D. Ariz. Aug. 30, 2013), when there is "much more information" available about the nature of the claims, and the defendant has an opportunity to bring a motion for decertification. *Anderson*, 2013 WL 1882370, at *2.

Swift asks that the Court hold Plaintiffs to a "higher standard of proof" because the parties have conducted some preliminary discovery going to conditional certification. Defendants' Opposition [ECF 65] ("Ds' Opp.") at 5:22-6:2. Swift's position collapses under the weight of authority.  Indeed, "[c]ourts in this Circuit [] routinely reject defendants' requests

to apply heightened scrutiny before the close of discovery and hold that the first-stage analysis applies until the close of discovery." *Benedict v. Hewlett-Packard Co.*, 2014 WL 587135, at *7 (N.D. Cal. 2014) (collecting cases); *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 629 (E.D. Cal. 2009) (collecting cases); *Guifu Li v. A Perfect Fran., Inc.,* 2011 WL 4635198, *4 (N.D.Cal. 2011).

This case is hardly approaching the close of discovery.  Discovery has been limited to targeted PMK deposition testimony and Swift's production of basic policy documents.[1] Therefore, the Court should follow the approach favored by the overwhelming majority of district courts in this Circuit and apply the traditional first stage analysis.

### B.  Swift concedes that the policies at issue are common across the Collective

There is no dispute that the policies challenged by Plaintiff here are uniform across the collective.  Indeed, Swift spends a great deal of its opposition defending these admittedly common policies on their merits. *See* Ds' Opp. at 7:3-13:3.  Specifically, Swift admits that it uniformly does not pay Trainees for time spent:

(1) In the truck's passenger seat immediately before or after 8 hours in the truck's "sleeper berth," resulting in a facial violation of 29 C.F.R. § 785.41 (providing that employees "required to ride" in a truck are "<u>working while riding</u>, except during bona fide meal periods or when [] permitted to sleep in adequate facilities furnished by employer.") (emphasis added);

---

[1] Swift's reference to "five 30(b)(6) depositions" overstates the scope of discovery conducted to date. *See* Ds' Opp. at 6:8-10.  Plaintiff's PMK depositions covered basic foundational topics on Swift's policies and procedures concerning job duties, work schedules, recording time, compensation, and company monitoring of the Trainees. *See* Exh. 1 to Piller Reply Decl., at 3-4.  Swift chose to produce five separate witnesses to appear for relatively short depositions on specific components within these topics. These five depositions lasted a total of approximately 15 hours (<u>including</u> lunches and other breaks.)  In addition, Defendants' counsel regularly objected to deposition questioning they deemed to be beyond the scope of the topics.  For example, defense counsel instructed a witness not to answer any more questions on a topic cutting to the heart of the case, even in his personal capacity. *See* Workman Depo. at 99:25-102:21 (instructing the witness not to answer questions regarding the benefit to Swift of "sleeper berth" time, because it was "well, well beyond the scope of his expected testimony.").

(2) In the truck's "sleeper berth" in excess of 8 hours during a 24 hour period, resulting in a facial violation of 29 C.F.R. § 785.22(a) (providing that only a "regularly scheduled sleeping period of <u>not more than 8 hours</u>" during each 24-hour period may be excluded from the compensable hours worked by employees on continuous tours of duty) (emphasis added);

(3) In the truck's "sleeper berth," without evidence of any agreement with any Trainee to exclude such time, resulting in a facial violation of 29 C.F.R. § 785.22(a) (providing that sleep time may be excluded from compensable hours worked only where the parties "agree to exclude" such time);

(4) In the truck's "sleeper berth," regardless of whether the employees "can usually enjoy an <u>uninterrupted</u> night's sleep" <u>*and*</u> "get at least 5 hours' sleep during the scheduled period." *See* 29 C.F.R. § 785.22(a), (b) (emphasis added).

(5) Swift also requires *all* Trainees to attend mandatory safety trainings at one of Swift's terminals (which often requires travel) and go through a driver qualification process on the first day of their orientation, without paying them for it. Exh. 2 to Piller Reply Decl., Deposition of Jack Workman ("Workman Depo.") at 33:16-25.  Again, Swift concedes that this policy applies uniformly to all Trainees, *see* Ds' Opp. at 10:18, and that the curriculum and materials are standardized. Workman Depo. at 16:12-17:4; 22:14-23:4; 30:18-32:3.

### C. Swift's common defenses present bona-fide legal disputes that can be decided for all Trainees in one stroke

"It is not the Court's role to resolve factual disputes ... or ... decide substantive issues going to the ultimate merits ... at the preliminary certification stage of an FLSA collective action." *Villarreal*, 66 F. Supp. 3d at 1189 (internal citations omitted); *see also Barrus v. Dick's Sporting Goods, Inc.*, 465 F.Supp.2d 224, 230 (W.D.N.Y. 2006).  Rather, the Court simply determines if the proposed collective is "similarly situated" with respect to the common policies alleged to violate the FLSA. *See Kellgren v. Petco Animal Supplies, Inc.*, 2015 WL 5167144, at *2 (S.D. Cal. 2015).

For example, Plaintiffs challenge Swift's global contention that the DOT regulations

---

excuse its policy of not paying Trainees for periods of up to two hours when they are "required to ride" in the passenger seat. *See* 29 C.F.R. § 785.41; Ds' Opp. at 7:16-23; *see also* Joint Plan [ECF 31] at 5:1-6:19 (asserting similar common defense based on DOT regulations). Plaintiffs ground their challenge in the DOL Regulations, DOL interpretative guidance and case law. In turn, Swift applies its defense uniformly to *all* Trainees.

As another example, Swift defends its policy of not paying for time logged as "sleeper berth" even when it exceeds 8 hours in a 24-hour period, by arguing that 29 C.F.R. § 785.22 "is clearly not applicable because none of its Trainees are on duty for periods of 24 hours or more." Ds' Opp. at 8:21-23. Yet, the courts have held that this very "on duty" contention can be resolved on a collective basis. *See, e.g., Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884, at *11 (D. Neb. Feb. 2, 2017) (case cited by Swift holding that question of whether analogous trainee truck drivers are "on duty" for purposes of triggering the requirements of 29 C.F.R. § 785.22, is suitable for class action treatment, even under the more rigorous Rule 23 inquiry); *see also Campbell v. C.R. England, Inc.*, 2015 WL 5773709, at *4 (D. Utah Sept. 30, 2015) (holding that bona fide dispute existed as to whether analogous truck drivers were "on duty" for purposes of triggering 29 C.F.R. § 785.22); *Schiller v. Rite of Passage, Inc.*, 2015 WL 4916932, at *4 (D. Ariz. Aug. 18, 2015) (deciding question of "on duty" status for purposes of 29 C.F.R. § 785.22 on a collective basis in FLSA case). As this Court has observed, the term "on duty" is ambiguous and "an individual can be both asleep and 'on duty'" under the DOL regulations. *Torres v. Transguard Ins. Co. of Am. Inc.*, 2014 WL 3362124, at *4 (D. Ariz. June 20, 2014) (Silver, J.). In other words, the "on-duty" question and applicability of § 785.22 are common merits issues, not reasons to deny certification.

These are just a couple examples. Given the structural and common issues that arise in cases such as this one, district courts throughout the country have regularly and recently certified similar claims in the same long haul trucking industry. *See, e.g., Slack v. Swift Transp. Co. of Arizona, LLC*, 2013 WL 6095548, at *4 (W.D. Wash. 2013) (analogous trainee truck drivers *employed by Swift*, under the stricter Rule 23 standard); *Petrone v. Werner Enterprises,*

*Inc.*, 2013 WL 3479280, at *6 (D. Neb. July 10, 2013) (analogous minimum wage claims brought by student drivers, certified under stricter Rule 23 standard); *Nance v. May Trucking Co.*, 2013 WL 10229756, at *5 (D. Or. 2013) (over-the-road drivers); *Campbell v. C.R. England, Inc.*, 2015 WL 5773709, at *1 (D. Utah 2015).

### D.  Plaintiff's position on the merits is well-supported by law and regulation

Although it is premature to decide the merits here, *see Villareal, supra*, Plaintiffs note that their facial challenges are firmly rooted in applicable law and regulation:

#### *Unpaid Time in the Truck's Passenger Seat*

As discussed above, 29 C.F.R. § 785.41 provides that employees "required to ride" in a truck are "working while riding" unless permitted to sleep in adequate sleeping facilities. Swift does not dispute that § 785.41 applies to the Trainees. *See* Ds' Opp. at 8:24-9:6 (arguing that § 785.41 should apply, rather than 29 C.F.R. § 785.22). Yet, Swift admits that it uniformly does not pay Trainees for up to 2-hour periods spent in the passenger seat of a moving truck. Exh. 9 to Konecky Decl. [ECF 60-5], Deposition of Victor Malchesky ("Malchesky Depo.") at 84:4-13; Workman Depo. at 76:11-23; 77:16-78:8; Exh. 11 to Konecky Decl. [ECF 60-6], SWIFT-Julian.000359.   Swift's own current trainee witness submitted with the opposition testified in deposition that "in my mind I was driving even though I was in the passenger seat." Exh. 3 to Piller Reply Decl., Deposition of Dominick Isca ("Isca (happy camper) Depo.") at 41:22-42:17; 43:8-11; *see also id.* at 56:4-57:16 (learned how to use the Qualcomm and checked it periodically for alerts while in the passenger seat).   Swift's only argument for excusing this facial inconsistency is that its policy complies with the DOT regulations governing hours of service. *See* Ds' Opp. at 7:17-21. Yet, DOT regulations govern hours of service for public safety, not compensable time under the FLSA.  In any event, Swift applies its defense uniformly to all Trainees.

#### *Unpaid Time in the Truck's Sleeper Berth*

"Any work which an employee is required to perform while traveling must, of course, be counted as hours worked.  An employee … who is required to ride therein as an assistant

or helper, is working while riding, except during bona fide meal periods or when he is permitted to sleep in adequate facilities furnished by the employer." 29 C.F.R. § 785.41.  Time when employees are "permitted to sleep in adequate facilities furnished by the employer" is an exception to this rule, *see id.*, and must be construed narrowly in light of the FLSA's broad, remedial purpose. *See Lambert v. Ackerley*, 180 F.3d 997, 1003 (9th Cir. 1999).  In turn, 29 C.F.R. § 785.22 further narrows the exclusion by limiting the amount of sleep time that employers can exclude from hours worked to 8 hours during a 24-hour period.

Swift contends that it can simply ignore § 785.22, and exclude a potentially *unlimited* amount of "sleeper berth" time from compensation, on the basis that § 785.41 is somehow a more "specific" regulation than § 785.22. Ds' Opp. at 8:24-28; 9:11-18.  On the merits, Plaintiffs will argue that § 785.22 is actually the more specific regulation because it provides a specific limit to the exclusion presented in § 785.41, and the two regulations can be applied harmoniously in any event.  The DOL's advisory opinions support Plaintiffs' interpretation:

> As indicated in Section 785.22 of the enclosed bulletin on Hours Worked, bona fide sleeping periods may be excluded from hours worked where <u>truck drivers</u> and helpers are an [sic] trips away from facilities for a period of 24 hours or more provided adequate sleeping facilities are furnished by the employer. The bone [sic] fide sleeping period is <u>limited to a maximum of 8 hours in computing hours worked</u>.

U.S. Dep't of Labor, Wage & Hour & Pub. Contracts Div. Advisory Op. 25 BA 302.5 (November 18, 1966) (emphasis added); *see also* U.S. Dep't of Labor, Wage & Hour & Pub. Contracts Div. Advisory Op. 25 BA 407.8 (February 17, 1964) (same).[2]  These DOL interpretations are "controlling unless plainly erroneous or inconsistent with the regulation[s]." *Ctr. for Biological Diversity v. Salazar*, 791 F. Supp. 2d 687, 694 (D. Ariz. 2011) (quoting

---

[2] Adopting Swift's contrary interpretation would invite abuse.  If an employer could exclude from pay any time when employees are "permitted to sleep," it could treat *any* time Trainees spend in the truck while their mentors drive as non-compensable, as long as they are theoretically "permitted to sleep" during that time.

*Auer v. Robbins*, 519 U.S. 452, 461, (1997)).[3]

Although Swift contends § 785.22 only touches employees who are "on duty" in the way that firemen are, *see* Ds' Opp. at 7:9-10, district courts have held that the regulation *also* applies to over-the-road truck drivers who are on continuous tours of duty, like the Trainees here. *See, e.g., Punter v. Jasmin Intern. Corp.*, 2014 WL 4854446 at *5-7 (D.N.J. 2014) (entering default judgment for plaintiff truck drivers on theory that time spent logged as "sleeper berth" is compensable); *see also Petrone*, 2017 WL 510884, at *6 (reasoning that § 785.22 may apply to over-the-road truck drivers and allowing "on duty" question to be adjudicated as part of class action). The DOL Handbook further explains that § 785.22 applies to "truck drivers or helpers only when they are on continuous tours of duty during trips away from home for a period of 24 hours or more." Field Op. Handbook, Ch. 31, 31b09(a).

Swift admits that Trainees are on continuous tours of duty, away from home for weeks on end, and spend most of their time in the truck (save for occasional nights in a motel and time spent at truck stops). Exh. 4 to Konecky Decl. [ECF 60-2], Deposition of Carl DiCharo ("DiCharo Depo.") at 104:22-105:19; 153:16-25; Workman Depo. at 42:23-43:5; Isca Depo. at 37:9-22 (agreeing that he was "living in the truck" while training); Exh. 4 to Piller Reply Decl., Deposition of Larry Carlisle, ("Carlisle (Mentor) Depo"), at 59:13-25 (same); *see also* Exh. A to DiCharo Decl. [ECF 65-1], at 32 ("Will I get home time while in training? <u>Not guaranteed</u>: We want to get you trained and running!") (emphasis in original). Furthermore, Defendant's witnesses testified that mentors can communicate with Trainees even while in the

---

[3] The DOL's Field Operations Handbook further recognizes that both § 785.41 and § 785.22 apply concurrently: "Berths in trucks are regarded as adequate sleeping facilities for the purposes of IB 785.41 <u>and</u> 785.22." Field Op. Handbook, Ch. 31, 31b09(a) (emphasis added). Ironically, Swift relies on this *very chapter* to argue that its sleeping facilities are adequate, *see* Ds' Opp. at 9:17-19, while ignoring its twin pronouncement that the sleeper berth is *not* adequate for more than 8 hours in a 24-hour period. Swift is creating a false choice between two complimentary regulations, when basic cannons of statutory construction instruct us to attempt to give effect to all of the provisions, so that no part will be inoperative, superfluous, void, or insignificant. *See Corley v. United States*, 556 U.S. 303, 314 (2009). There is no reason why both regulations cannot apply concurrently here.

sleeper berth, DiCharo Depo. at 108:3-12, and Swift's Director of Safety testified that he was not aware of any rules or regulations prohibiting interaction between the driver and the person in sleeper berth. Malchesky Depo. at 63:16-22; 64:25-65:10.  Swift also has not identified any training or procedure whereby Trainees can seek pay for time when their sleep was interrupted or lasted less than 5 hours, while logged as "sleeper berth." *See* 29 C.F.R. § 785.22(b).[4]

At a minimum, the applicability of and interplay between the various regulations—as well as the meaning of "on duty" itself—present common disputes on the merits.

### *Unpaid Time at the First Day of Orientation*

The legal test for whether mandatory training is compensable depends on questions of fact that cannot be answered without further discovery, such as whether Swift obtained a benefit or advantage from the training, whether the training expedited Swift's business, and whether the training displaced any of Swift's regular employees. *See Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947); *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996).  Many of these fact questions lend themselves to collective adjudication because they revolve around Swift's operations, as opposed to the circumstances of individual Plaintiffs.[5]

Even the limited discovery to date, however, indicates that this time spent at the first day of orientation is compensable.  Swift's New Driver Onboarding Leader confirms that the first day includes up to two hours of required safety classes and hazardous materials training,

---

[4] Even assuming *arguendo* truck drivers were not on duty for 24 hours, § 785.21 still provides that "[a]n employee who is required to be on duty for <u>less than 24</u> hours is working even though he is permitted to sleep or engage in other personal activities when not busy… It makes no difference that she is furnished facilities for sleeping." (emphasis added); *see also* 3 Emp. Coord. Compensation § 20:246, Employees on duty less than 24 hours (citing Wage & Hour Field Operations Handbook P31b09) ("all of the time spent by truck drivers on trips that begin and end at their home station and are performed within one working day is working time, even though some of that time is spent in the sleeping berth of the truck.").

[5] Swift makes much of *Nance v. May Trucking Co.*, 2014 WL 199136 (D. Or. Jan. 15, 2014), which held that truck drivers were not entitled to payment for time spent at orientation.  Swift neglects to mention, however, that *Nance* was decided at summary judgment, after the Court certified the class and the parties were able to conduct merits discovery. *Id*. at *1.

in addition to the required physical examinations, drug tests, and road evaluations. Workman Depo. at 27:21-28:15; 36:20-37:9. Although Swift states in a conclusory manner that the first day does not "expedite Swift's business" or confer any "immediate advantage" on the company, *see* Ds' Opp. at 12:4, 12:8, it admits in the same breath that if Trainees do not pass the tests, establish their qualifications, and attend the rest of the first day's training, they cannot get out on the road and drive for Swift. *Id*. at 12:3-6. Presumably, Swift would not require the training if it did not carry the benefit of getting more truckers on the road, driving for it.

Applicable DOL regulations provide that attendance at training programs and similar activities must be paid unless "[a]ttendance is in fact voluntary." 29 C.F.R. § 785.27. Attendance is "not voluntary in fact if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance." *See* 29 C.F.R. § 785.28; *Fowler v. Incor*, 279 F. App'x 590, 599 (10th Cir. 2008). Here, there is no dispute that Swift leads its employees to believe that they will not be able to work for Swift without first completing all three days of orientation. *See, e.g.,* Workman Depo. at 35:9-12. Again, however, this is a dispute for a later stage.

### E. Plaintiff's substantial allegations of Swift's unlawful pattern and practice more than meet the lenient standard at phase one

Swift uniformly instructs Trainees to study and engage in learning as much as possible, *see* Exh. 6 to Konecky Decl., [ECF 60-2], at SWIFT-Julian.000095, but it does not maintain a policy as to whether study time is compensable, nor does it track when, where, or for how long it is performed. DiCharo Depo. at 78:5-18; 82:16-25; Workman Depo. at 127:23-128:7; Exh. 10 to Konecky Decl., Deposition of Josh Grow ("Grow Depo.") at 38:25-39:7; *see also* Carlisle (Mentor) Depo. At 29:16-30:19; 46:21-47:7 (mentor testifying he took no steps to prevent Trainees from studying in the sleeper berth, even though he suspected it was occurring). Nor does Swift put any upper limit on the amount of "sleeper berth" time that can be recorded in a 24-hour period. In turn, Plaintiffs have provided substantial allegations that Swift either requires <u>or</u> suffers and permits (has reason to know), the Trainees study and

perform other tasks during this DOT-mandated "off-duty" or "sleeper berth" time, and that this allows Swift to be more productive while remaining within the DOT hours of service regulations.

Plaintiffs' off-the-clock allegations do not depend on showing Swift's written policies themselves are facially unlawful.[6]   On the contrary, courts in this Circuit and elsewhere regularly certify collective actions based on modest evidence that common practices lead to off-the-clock work, in spite of ostensibly lawful written policies.[7]

Swift criticizes Plaintiffs for not showing enough "support" or "desire" from the Collective. *See* Ds' Opp. at 19:5-20:9.  The critique is ironic, given Swift's refusal to provide contact information for either all or even a sample of the collective before certification. This prevented the overwhelming majority of Trainees from ever receiving notice of the opportunity to assert their claims at the pre-notice stage.  Moreover, Plaintiffs did not receive a "13-month head start," given that the pleadings were not resolved until June 9, 2016, *see*

---

[6] The FLSA regulations stress that "[t]he mere promulgation of a rule against [off-the-clock] work is not enough. *Management has the power to enforce the rule and must make every effort to do so*." 29 C.F.R. § 785.13 (emphasis added). *See also Beauperthuy v. 24 Hour Fitness*, 2008 WL 793838, at *4 (N.D. Cal. Mar. 24, 2008); *Chao v. Pacific Stucco, Inc.*, 2006 WL 2432862, *6 (D. Nev. Aug. 21, 2006); *Cunningham v. Gibson Elec. Co.*, 43 F. Supp.2d 965, 975 (N.D. Ill. 1995); *Martin v. Funtime, Inc.*, 792 F. Supp. 539, 542 (N.D. Ohio 1991).  Indeed, Plaintiff need not show that work performed off-the-clock was "required," but only that Swift suffered and permitted it. 29 C.F.R. § 785.13. *Cf.* Ds' Opp. at 17:1-2 (arguing that Plaintiffs' declarations lack "any statement that the mentors <u>required</u> them to violate Swift policies…") (emphasis added).

[7] *See, e.g., Barrera v. US Airways Grp., Inc.*, 2013 WL 4654567, at *6 (D. Ariz. Aug. 30, 2013) (granting conditional certification based on allegations of "a pattern or practice" of not paying employees in compliance with FLSA); *Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 2d 1105, 1118 (C.D. Cal. 2011) (certifying claims based on allegations of off-the-clock work performed away from employer's facility in declarations from four opt-in plaintiffs); (certifying claims based on allegations of pre- and post-shift work performed off-the-clock); *Carter v. Anderson Merchandisers, LP*, 2008 WL 2783193, at *2 (C.D. Cal. July 10, 2008) ("Though at this stage the plaintiff's evidence may show no more than a pattern of illegal conduct, this does not prevent conditional certification..."); *Amador v. Morgan Stanley Co.*, 2013 WL 494020, at *1, *6 (S.D.N.Y. Feb. 7, 2013); *Alvarez v. Farmers Ins. Exch.*, 2014 WL 4685031, at *1-*3 (N.D. Cal. Sept. 19, 2014); *Burch v. Qwest Communications International, Inc.*, 500 F. Supp. 2d 1181, 188-1190 (D. Minn. 2007); *In re Bank of America Wage and hour Employment Litigation*, 286 F.R.D. 572, 586-587 (D. Kan. Sept. 27, 2012).

---

Answer [ECF 31], and Swift first responded to discovery at the end of October of 2016 (even then, without providing contact information for any Trainees).  Still, Plaintiffs have buttressed their case with opt-ins and sworn declarations from Trainees across the country.   In contrast, Swift has had ready access to its Trainees, but only managed to muster 12 declarations from them (and then failed to produce many for deposition).

In any event, the requirement of extensive "support" at the notice stage "has almost never been applied outside of the Eleventh Circuit, and has never been applied in the Ninth Circuit." *Gomez v. H & R Gunlund Ranches, Inc.*, 2010 WL 5232973, at *5 (E.D. Cal. Dec. 16, 2010); *see also Colson*, 687 F. Supp. 2d at 926 (quoting *Rehwaldt v. Elec. Data Sys. Corp.*, 1996 WL 947568, at *4 (W.D.N.Y. March 28, 1996)) ("To proceed to the notification stage of the litigation, Plaintiffs' allegations need neither be 'strong [n]or conclusive.'").[8]  Indeed, courts in this Circuit regularly certify collectives without holding plaintiffs to some number of opt-in plaintiff declarations or other arbitrary signal. *See, e.g., Villarreal*, 66 F. Supp. 3d at 1190 (granting conditional certification based on declarations of five opt-in plaintiffs, despite the defendant's submission of 54 employee declarations); *Mitchell*, 841 F. Supp. 2d at 1117 (same, based four opt-in plaintiff declarations, despite 105 current employee declarations);

---

[8] Swift could only find one case from the Ninth Circuit suggesting that Plaintiffs must show "support." *Felix v. Davis Moreno Constr., Inc.*, 2008 WL 4104261, at *7–8 (E.D.Cal. Sept. 3, 2008).  One Court in this Circuit described *Felix* as an "extreme case" in which "the plaintiff offered no declarations from the allegedly similarly situated employees and further mischaracterized the deposition testimony of the employer," and reasoned that "a small number of declarations is acceptable at the first stage.").  The out-of-circuit cases also are distinguishable. For instance, the Court declined to certify a collective in *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) because liability turned on individual questions presented by local policies of various managers at different sites; the decision did *not* turn on a lack of "support." *See id*.  Moreover, at least one Court in this Circuit has observed that the decision in *England* came at the "second stage of the analysis" because the "plaintiffs had already conducted substantial discovery." *Morden v. T-Mobile USA, Inc.*, 2006 WL 2620320, at *3 (W.D. Wash. Sept. 12, 2006).  As another example, the plaintiff in *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) did not submit declarations from *any* other members of the putative collective.

*Gilbert v. Citigroup, Inc.*, 2009 WL 424320, at *2, (N.D.Cal. Feb. 18, 2009) (five plaintiff declarations); *Escobar v. Whiteside Constr. Corp.*, 2008 WL 3915715, at *3–4, (N.D.Cal. Aug. 21, 2008) (three plaintiff declarations).

**F.  Even the limited discovery to date indicates that proving liability and damages on a class basis will be manageable**

Arguments pertaining to manageability and common proof "are within the province of the second tier of conditional class certification, not the first." *Villarreal*, 66 F. Supp. 3d at 1194; *Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 649 (W.D. Wash. 2011) (reasoning that "fairness and procedural considerations" are reserved for the second stage).

Nevertheless, Swift admits that its compliance department tracks whether Trainees performed productive tasks during periods of time logged as "sleeper berth" or "off-duty" (i.e. when they worked off-the-clock).  Swift even conducts regular audits that identify such periods of time for purposes of DOT compliance. Malchesky Depo. at 13:7-22; 16:12-17:14; 24:2-20; 32:7-24; 33:18-25.  Although Swift apparently does not share the results of these audits with the payroll department to ensure Trainees are compensated for working while incorrectly logged as "off-duty" or "sleeper berth," *see id.* at 38:20-39:21; Exh. 3 to Konecky Decl. [ECF 60-2], Deposition of Sarah Koogle, at 56:16-57:20, there is no reason why this cannot be done at a later stage to help determine damages.[9]  On top of the audit data, Defendants' "ICC" database contains comprehensive information showing the Trainees' total hours, compensation, when and to what extent time was logged in any one of the four duty

---

[9] Rather than using its compliance and other data to correct timekeeping errors, Swift shifts the burden onto the Trainees.  Indeed, Swift's backup argument is to blame Trainees for any underpayment because they purportedly have an opportunity to review their recorded hours for accuracy and request corrections. *See* Ds' Opp. at 14:6-13.  Merely having employees "review and verify" their hours, *see id.* at 14:10, however, does not itself exonerate the employer, as the right to overtime and minimum wage are non-waivable. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).  At bottom, Swift's reliance on a payroll correction process and possibility for employees to make complaints is for the merits. Still, for purposes of conditional certification, it is noteworthy that Swift makes the <u>same</u> argument for <u>all</u> Trainees.

statuses, and when productive tasks were performed. Grow Depo. at 34:21-38:16; 53:6-54:12; 55:20-59:3.  Swift's Director of IT further confirms that the system can be queried in a manner that would identify potential violations. *Id*. at 53:6-54:12; 55:20-59:3.[10]

Regardless, the presence of individualized damages does not defeat certification. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).  Indeed, "damages determinations are individual in nearly all wage-and-hour class actions." *Leyva*, 716 F.3d at 513.

### G. Swift's handpicked Trainee declarants make up just 0.02% of the collective, and their declarations are of little evidentiary value at this stage

"Just as courts have not traditionally required a plaintiff seeking conditional certification to come forward with some threshold quantity of opt-in plaintiffs . . . it is no more helpful for the employer to round up a small sample of favorable statements from employees." *Creely v. HCR Manor Care, Inc.*, 789 F. Supp.2d 819, 840 (N.D. Ohio 2011); *Mitchell*, 841 F. Supp. 2d at 1118.  This is particularly true in FLSA cases, where any detailed review of individualized facts is supposed to occur at the merits phase after completion of discovery. *Id.; see also Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009).  Moreover, the courts often view employee declarations like Swift's with suspicion because of the potential for coercion and the underlying pressure employees may feel to provide a statement to stay in good graces with their employer.[11]  In any event, it is no defense that Swift's handpicked, current employee declarants apparently are content not to be paid for compensable time. *Cf.*

---

[10] Swift also contends that "this action is not appropriate for class certification" because the FLSA's *de minimis* rule may apply.  Yet, applicability of the *de minimis* rule is a common issue that lends itself to class treatment. *See, e.g., Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 604 (C.D. Cal. 2015); *Rai v. Santa Clara Valley Transportation Authority*, 308 F.R.D. 245, 259 (N.D.Cal.2015).

[11] *See, e.g., Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 WL 4813532, *5 (N.D. Cal. 2005); *see also Morden v. T-Mobile USA, Inc.*, 2006 WL 2620320, *3 (W.D. Wash. Sept. 12, 2006); *Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 664 (D. Minn. 1991); *Bublitz v. E.I. DuPont de Nemours and Co.*, 196 F.R.D. 545, 547 (S.D. Iowa 2000).

Isca Depo. at 107:20-108:12.   In addition, Swift failed to specifically identify or produce discovery on any of these declarants before submitting its opposition, and then produced only two of them for deposition before the reply.

**H. The nature of the Trainees' profession makes notice by e-mail appropriate**

Swift itself emphasizes that a certified class must receive "the best notice practicable under the circumstances[.]" *See* Ds' Opp. at 20:24-26. Indeed, communication by e-mail is "the norm" in this day and age, *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) (approving notice by e-mail to FLSA collective), and courts in this Circuit routinely permit email notice" in FLSA cases. *Senne v. Kansas City Royals Baseball Corp.*, 2015 WL 6152476, at *19 (N.D. Cal. Oct. 20, 2015) (collecting cases); *Otey v. CrowdFlower, Inc.*, 2013 WL 4552493, at *6 (N.D. Cal. Aug. 27, 2013). Moreover, the Trainee truck drivers spend months away from home for work, and "because of the nature of their profession, may not be timely reached by first-class mail." *Petrone v. Werner Enterprises, Inc.*, 2013 WL 12176452, at *1–2 (D. Neb. Apr. 1, 2013) (approving electronic notice to collective of over-the-road truck drivers).  Swift's speculation that e-mail notice could lead to distortion or invasion of privacy has no merit. *See Senne*, 2015 WL 6152476, at *19; *Lujan v. Cabana Mgmt., Inc.*, 2011 WL 3235628, at *3, n.3 (E.D.N.Y. July 27, 2011) (email is an "unobtrusive option, one that affords the recipient time to reflect before deciding whether to respond…").

**I.   Equitable tolling is necessary to preserve claims**

Plaintiffs' notice of motion explicitly seeks relief in the form of court-facilitated notice sent to Trainees employed by Swift "at any time from December 29, 2012 to the present," [ECF 60] at i:2-8, which itself implicates equitable tolling.[12] On the merits, Swift's refusal to

---

[12] Plaintiffs worked to conform their opening brief to the 17-page limit set out in the local rules, *see* Local Rule 7.2 (e)(1), and did not attempt to circumvent the page limitations by splitting the relief sought into two separate motions. Plaintiffs are not aware of a procedural rule barring them from seeking this relief in a single motion.  In contrast, Swift bypassed even its extended 22-page limit by using an additional seven pages to respond to Plaintiff's request

provide contact information for the collective when Plaintiffs first requested it back in January 2016 (and again in formal discovery in October 2016) justifies equitable tolling to protect the rights of potential opt-in plaintiffs whose claims are being extinguished or diminished every day through no fault of their own. *See Adams v. Inter-Con Sec. Sys., Inc.,* 242 F.R.D. 530, 542-43 (N.D. Cal. 2007); *Mitchell*, 841 F. Supp. 2d at 1120.  Although Swift might not be compelled in discovery to disclose contact information until after conditional certification, equitable tolling "counters the advantage [Swift] would otherwise gain by withholding potential plaintiffs' contact information until the last possible moment." *Adams*, 242 F.R.D. at 543.  Equitable tolling is also appropriate because Plaintiffs diligently pursued their legal remedies. *Adams*, 242 F.R.D. at 542-43; *Ashcroft v. Randel*, 391 F. Supp. 2d 1214, 1226 (N.D. Ga. 2005).  In light of Swift's initial request to transfer venue and subsequent motion to dismiss, the initial scheduling conference was not held until August 26, 2016.  Swift then did not produce policy documents until November, 2016, and Plaintiffs' brought a timely motion after minimal discovery. *See Stickle v. SCIWestern Mkt. Support Ctr., L.P.*, 2008 WL 4446539, at *22 (D. Ariz. Sept. 30, 2008) (granting tolling because motion to dismiss had to be resolved before conditional certification).

## III.   **CONCLUSION**

    For all the reasons stated above, the Court should grant Plaintiff's Motion for Conditional Certification and to Facilitate Notice Pursuant to 29 U.S.C. § 216(b).

                                    Respectfully submitted,

Dated:  March 13, 2017

                        By:   /s/ *Joshua Konecky*
                              JOSHUA KONECKY
                              Attorney for Plaintiffs

_____

for equitable tolling.  This brings Swift's total pages used in opposing Plaintiff's motion to 29, a violation of the stipulated order extending the page limits for opposition and reply [ECF 66].

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.


/s/ *Joshua G. Konecky*
Joshua G. Konecky (SBN 182897)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
jkonecky@schneiderwallace.com