**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Julian, | No. CV-16-00576-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Swift Transportation Company Incorporated, et al., | |
| Defendants. | |

In a December 2018 Order, the Court concluded Defendant Swift Transportation Company Inc. was entitled to deduct no more than eight hours from driver pay for time spent in a truck's sleeper berth. (Doc. 207). In a May 2019 Order, the Court concluded Plaintiffs were entitled to be paid for "time they spent studying while logged as 'sleeper berth.'" (Doc. 220 at 10). Swift now seeks reconsideration of the conclusion that it could not deduct more than eight hours from driver pay. If reconsideration is not granted, Swift seeks certification of that issue for interlocutory appeal. Swift also seeks certification for interlocutory appeal of the studying time issue.

**I. Compensability of Sleep Time in Excess of Eight Hours**

In its December 28, 2018 Order, the Court addressed the parties' competing positions regarding the compensability of time Plaintiffs spent in sleeper berths. In particular, the issue was how the Court should interpret 29 C.F.R. §§ 785.22 and 785.4. The Court concluded the best reading of those two regulations was one that allowed the two regulations to "work[] together" such that "employers of truck drivers [can] deduct

eight hours of sleeping time but that deduction is, pursuant to § 785.22, limited to eight hours." (Doc. 207 at 21). This reading gave "effect to the language in both regulations" and was "consistent with the 'overall statutory and regulatory' scheme aimed at protecting employees' health and well-being." (Doc. 207 at 21).

After reaching its conclusion regarding the proper reading of the regulatory language, the Court noted "there may be no need to resort to other sources of interpretation." (Doc. 207). But because the parties had devoted a substantial amount of their briefing to opinion letters issued by the Department of Labor ("DOL"), the Court assessed how much deference DOL opinion letters were entitled to receive and whether the particular letters cited by the parties were entitled to deference. The Court first concluded DOL opinion letters can be a proper basis for agency deference. (Doc. 207 at 23-24). And as for the particular letters the parties cited, those opinion letters would be useful if the regulations were viewed as ambiguous. In that situation, deference to the opinion letters would establish "Swift was entitled to deduct no more than eight hours per day as time Plaintiffs were allowed to sleep." (Doc. 207 at 28).

On July 22, 2019, the DOL issued a new opinion letter addressing "whether the time spent in a truck's sleeper berth is compensable hours worked under the [FLSA]." 2019 WL 3345452. That letter observed that two opinion letters from 1943 and 1951 had concluded such time was not compensable but two opinion letters from 1964, as well as opinion letters from 1966, 1978, and 1979, had concluded such time was compensable. The new letter reasoned the interpretation the DOL had followed from 1964 through 2019 was "unnecessarily burdensome for employers." Therefore, the new letter held time spent "in a sleeper berth is presumptively non-working time that is not compensable."

After the DOL's 2019 opinion letter, the parties submitted briefing regarding its application to the present case. The parties have, in effect, switched positions. Now that Swift has an opinion letter it agrees with, it argues the Court should defer to that letter. As for Plaintiffs, while they maintain their position that opinion letters can be the basis for agency deference, they argue the Court should not defer to the 2019 letter because the

regulations are not ambiguous and, even if they were, the DOL's sudden change in positions would not merit deference.

After the Court's December 2018 Order, the Supreme Court outlined the steps a court must take before deferring to an agency interpretation of an allegedly ambiguous regulation. *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). "First and foremost, a court should not afford . . . deference unless the regulation is genuinely ambiguous." *Id.* at 2415. This ambiguity determination requires a court "exhaust all the 'traditional tools' of construction." *Id.* Thus, "a court must 'carefully consider[ ]' the text, structure, history, and purpose of a regulation." *Id.* With this careful analysis, it will often be possible to solve "hard interpretive conundrums" even if the regulations are difficult to parse. The possibility of deference only arises once the "legal toolkit is empty and the interpretive question still has no single right answer." *Id.* But even then, deference remains simply a possibility.

Even when a court concludes there is a "genuine ambiguity" in a regulation, an agency's interpretation is entitled to deference only if it is "reasonable." *Id.* That is, the interpretation "must come within the zone of ambiguity the court has identified." *Id.* This is not an empty requirement; it is "a requirement an agency can fail." *Id.* And when there is an ambiguity, and the agency has adopted a reasonable interpretation regarding the precise ambiguity, a court *still* might not defer to that interpretation if the agency's interpretation does not reflect "fair and considered judgment." *Id.* at 2417. This means deference might not be appropriate if, for example, the interpretation would "create[] 'unfair surprise' to regulated parties." *Id.* at 2418. That is, an inappropriate "disruption of expectations may occur when an agency substitutes one view of a rule for another." *Id.*

Applying the *Kisor* guidance to the present case does not require reconsideration of the Court's prior conclusion regarding the proper interpretation of §§ 785.22 and 785.41. As explained in great detail in the Court's December 2018 Order, the regulations are not ambiguous and there is no need to resort to DOL opinion letters. In the language of *Kisor*, the regulations are not "genuinely ambiguous" because the "traditional tools of

construction" establish the reading adopted by the Court is the correct reading. *Id.* at 2415. That is, "the test, structure, history, and purpose of [the] regulation[s]" resolve the "seeming ambiguit[y]." *Id.* And because there is no genuine ambiguity, it would be inappropriate to defer to the DOL's guidance. *See Amazon.com, Inc. v. Comm'r of Internal Revenue*, 934 F.3d 976, 992 (9th Cir. 2019) (noting a regulation's text, structure, and "rulemaking history" left "little room" for the agency's interpretation).

If the Court were to ignore the guidance in *Kisor* and look to the DOL guidance in the absence of ambiguity, or if the Court were to conclude the regulations were "genuinely ambiguous," deference to the July 2019 opinion likely would not be appropriate. *Kisor*, 139 S. Ct. at 2415. To understand why, it is important to look to DOL's own interpretations of the regulations since their enactment in 1955.

The analysis in the 2019 DOL letter contains a wide variety of indications that it does not reflect the DOL's "fair and considered judgment." *Id.* at 2417. To begin, the 2019 letter explains the "earliest guidance" issued by the DOL established "time spent sleeping in a sleeper berth [was] generally considered . . . noncompensable." But the "earliest guidance" referenced by the DOL was issued in 1943 and 1951, years before the current regulations were issued in December 1955. (Doc. 242 at 4). Multiple opinion letters issued after the regulations were promulgated explicitly noted the 1943 guidance had been "superseded" by the regulations. (Doc. 242-5 at 2; 242-6 at 2). One of those opinion letters explained the 1955 regulations "add[] limitations" to the 1943 guidance. Another opinion letter stated the guidance in 1943 was "changed" by the adoption of the 1955 regulations. (Doc. 242-8 at 2). In other words, before 2019 the DOL repeatedly expressed its view that the 1955 regulations had rendered its 1943 guidance obsolete. The 2019 opinion letter provides no explanation why "guidance" issued prior to promulgation of the relevant regulations is now relevant to the proper interpretation of those regulations.

Next, the 2019 opinion letter admits that opinion letters issued in 1964, 1978, and 1979 all concluded that no more than eight hours could be excluded from driver compensation. The opinion letters from 1978 and 1979 are especially instructive regarding

the DOL's view of the regulations' meaning. The 1978 letter contains a very straightforward view of the DOL's view of the proper interaction between §§ 785.22 and 785.41. In that letter, the DOL stated the two regulations

> must be read in conjunction and not as separate positions regarding sleeping time. As section 785.22 makes clear, the maximum amount of time for sleeping that can be deducted from working time where employees are on 24-hour duty is 8 hours.

(Doc. 242-8 at 2). The 1979 letter is even clearer on this point and is worth quoting at length.

In its 1979 letter, the DOL noted the proper interpretation of the interaction between §§ 785.22 and 785.41 was "obvious[]." The letter stated, in relevant part

> [I]t has long been our position that section 785.41 must be read in conjunction with sections 785.21 and .22, rather than as a separate position regarding sleeping time. In other words, section 785.41 makes clear that even when an employee is the operator of a vehicle, or is an assistant or helper to such an operator, sleeping time may be excluded from hours worked where "adequate facilities" are furnished. However, the limitations of section 785.21 and 785.22 obviously apply, since section 785.41 does not alter the general rules on sleep time. To read section 785.41 as permitting the deduction from hours worked of even more than 8 hours of sleep in a period of 24-hours or more leads to the anomalous result that a truck driver with a small berth to sleep in could have more sleep time deducted from hours worked than a non-traveling employee in a large, comfortable bed.

It appears the DOL issued no additional guidance after the 1979 letter. Thus, after the regulations were enacted in 1955, the DOL followed the same interpretation of those regulations for approximately 64 years. Then, in 2019, the DOL changed positions. The DOL's only effort to explain its change in positions is that its previous position was "unnecessarily burdensome for employers." The FLSA's general purpose is to protect the "health, efficiency, and general well-being of workers." 29 U.S.C. § 202. Thus, a change from a long-standing position based *solely* on alleviating the burden to employers is dubious because it is in violation of the statutory purpose. More importantly, however, the 2019 letter offers no explanation why the interpretation of the governing regulations that

DOL believed was "obvious[]" for over 60 years is no longer so obvious. The absence of meaningful discussion within the 2019 letter raises substantial questions whether the letter qualifies as a "fair and considered judgment" by the DOL that would be entitled to deference in the event of a regulatory ambiguity.

A final reason to doubt the 2019 opinion letter would be entitled to deference is that the sleeper berth time at issue in this case occurred long before the DOL 2019's letter. At the time the drivers were subjected to Swift's sleeper berth policies, the proper interpretation and application of the governing regulations had been in place for approximately 60 years. Swift chose not to follow the governing law and failed to compensate its drivers. Now, Swift is arguing the 2019 letter should, in effect, be given retroactive effect such that its behavior—which was unlawful at the time—should be viewed as lawful and excused. The retroactive effect of a new agency interpretation is a complicated area that the Court need not wade into. For present purposes, it is enough to observe that Swift's attempt to invoke the 2019 letter possibly presents something similar to the type of "unfair surprise" the Supreme Court has warned against regarding regulatory changes.[1]

Agencies are free to adopt different interpretations of regulations at different times, provided those "interpretive changes create no unfair surprise." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170 (2007). Here, Plaintiffs filed suit based on regulations adopted in 1955 and followed for over sixty years. Yet Swift would now have the Court adopt an interpretation that would undercut Plaintiffs' attempt to seek relief. Such "disruption of expectations" must be viewed with some skepticism. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2418 (2019).

Overall, there is no ambiguity that raises the possibility of deference to agency interpretation. Borrowing from the words of the DOL in 1979 and the Supreme Court in 2019, the eight-hour limitation to sleeper berth time "obviously" applies as Swift's

---

[1] It is noted that the 2019 DOL opinion letter cites the decision and opinion in this case regarding the compensability of sleeper berth time. The only proper method to challenge this Court's decision is in the Ninth Circuit Court of Appeals.

proposed interpretation would be contrary to the "text, structure, history, and purpose" of the governing regulations. *Kisor*, 139 S. Ct. at 2415.

## II. Certification of Interlocutory Appeal

Swift seeks certification for interlocutory appeal of two issues: 1) whether "all hours over eight spent in [a] truck's sleeper berth must be counted as compensable"; and 2) whether "any time trainees spent studying while in the sleeper berth is also compensable." (Doc. 221 at 5). To be entitled to certification, Swift must establish the issue "involves a controlling question of law," there is a "substantial ground for difference of opinion" regarding the right answer, and "an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The parties seem to agree the two issues Swift seeks to appeal present questions of law. Thus, the first requirement is met for both issues. Swift, however, cannot meet the latter two requirements for either issue.

When approaching a certification request, the Ninth Circuit has stressed the statute allowing interlocutory appeals "is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002). Thus, certification for an interlocutory appeal is appropriate only in "rare circumstances" or "exceptional situations." *Id. See also In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981). The present case does not present an exceptional situation.

The second requirement for interlocutory appeal is that the issue is one on which there is "substantial ground for difference of opinion." This requires determining "to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Usually, controlling law will only be sufficiently unclear "where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id. See also Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (holding "[a] substantial ground for difference of opinion exists where

1  reasonable jurists might disagree on an issue's resolution"). Here, the right answer
2  regarding the maximum deduction for sleeper berth time and the compensability of
3  studying time is relatively clear.

4  The correct interpretation of the regulations applicable to sleeper berth time presents
5  a facially difficult issue in that it requires reconciling two regulations that could be viewed
6  as conflicting. But deploying all the tools in the "legal toolkit," the correct answer becomes
7  clear. *Kisor*, 139 S. Ct. at 2415. As noted previously, the DOL thought the answer was
8  "obvious" for over fifty years. And while the DOL and a few other courts have adopted
9  conflicting positions recently, those authorities have not addressed the regulations and all
10 the surrounding circumstances in a coherent manner. For example, Swift emphasizes the
11 Ninth Circuit's decision in *Nance v. May Trucking Co.*, 685 F. App'x 602 (9th Cir. 2017),
12 as creating some doubt regarding the maximum deduction for time spent in the sleeper
13 berth. But that case appears to have addressed an entirely different legal theory that drivers
14 should be paid for *all* time spent in the sleeper berth. That has never been the legal theory
15 at issue in this case and the *Nance* decision does not establish there is a substantial ground
16 for difference of opinion regarding the actual issue. Swift also points to *Petrone v. Werner
17 Enterprises, Inc.*, as establishing the law regarding compensation of sleeper berth time is
18 unclear. No. 8:11CV401, 2017 WL 510884 (D. Neb. Feb. 2, 2017). But that opinion's
19 analysis is obviously incorrect. That opinion relied, in part, on the language of regulations
20 issued by the Department of Transportation. *Id.* at *9 ("The language of the DOT
21 regulations with respect to sleeper berth time clarifies the meaning of § 785.41."). There
22 is no legal basis to rely on DOT regulations for the proper interpretation of DOL
23 regulations.

24 Swift has not cited any authority establishing a plausible basis to conclude this
25 Court's conclusion regarding sleeper berth time was incorrect. In other words, Swift has
26 not established that, when confronted with all the relevant material, reasonable jurists
27 would reach a different conclusion. Therefore, the sleeper berth issue does not meet the
28 second factor allowing for interlocutory appeal.

Swift also argues there is a substantial ground for difference of opinion on the compensability of studying time. Swift does not, however, cite any authority directly on point. To be sure, Swift relies on out-of-circuit cases involving somewhat analogous situations. But as the Court previously explained, those situations differed from the present in a crucial way in that the studying at issue in the other cases was for independent certifications. There is no basis to conclude reasonable jurists would view job-specific studying of the type at issue in this case as presenting a difficult issue.

Finally, even if Swift had been able to meet the second requirement regarding either issue, Swift has not established an immediate appeal might materially advance the ultimate termination of this litigation. Discovery is closed and the case will be set for trial in the near future. Allowing Swift to pursue a potentially years-long delay in a case that is already three years old and ready for trial would not be efficient. Rather, it is preferable to resolve the remaining disputes and allow this case to follow the normal course of appellate review.

**III. Remaining Issues and Trial**

A number of other issues have been fully briefed and will be resolved soon. Because a trial will be necessary regardless of the outcome of the other issues, the parties will be required to file a joint statement outlining their availability for trial in 2020.

Accordingly,

**IT IS ORDERED** the Motion for Certification of Interlocutory Appeal (Doc. 221) is **DENIED**.

**IT IS FURTHER ORDERED** no later than **January 10, 2020**, the parties shall file a joint status report indicating the weeks both sides are available for trial from February 2020 through July 2020.

Dated this 10th day of December, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge