IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Julian,<br><br>        Plaintiff,<br><br>v.<br><br>Swift Transportation Company Incorporated, et al.,<br><br>        Defendants. | No. CV-16-00576-PHX-ROS<br><br>**ORDER** |

      At the status hearing on January 14, 2020, Defendant Swift Transportation Company argued Plaintiffs were required to "move[] for final certification" before this case could proceed to trial on a collective basis. According to Swift, Plaintiffs' failure to seek "final certification" means "we don't actually have a collective." Swift pointed to one case that allegedly supported this position, and the Court invited Swift to submit additional support. Swift subsequently filed a statement, identifying other cases allegedly supporting its position. Plaintiffs then filed their own statement, presenting their side of this dispute. Having reviewed both sides' submissions and the governing Ninth Circuit law, it is clear Swift's argument is premised on a fundamental misunderstanding of collective action litigation under the Fair Labor Standards Act ("FLSA").

      In 2018, the Ninth Circuit issued a lengthy opinion outlining in detail the features of collective action litigation under the FLSA. *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018). As explained in that opinion, "[c]ollective actions and class actions are creatures of distinct texts—collective actions of section 216(b), and class actions of

Rule 23—that impose distinct requirements." *Id.* at 1101. Courts have sometimes borrowed phrases or concepts from the class action context and applied them in the collective action context but doing so has "inject[ed] a measure of confusion into the wider body of FLSA jurisprudence." *Id.* Much of the confusion stems from borrowing the terms "certification" and "decertification" from the class action context and applying them in the FLSA context.

Starting with "certification," that term has very different meanings in the class and collective action contexts. With respect to class actions, a district court plays a "gatekeeping role" in that it must make an affirmative decision to certify a class. *Id.* But a district court has no such role in the collective action context. *Id.* It is true that district courts often grant "preliminary certification" in collective action cases but "[t]he sole consequence of a successful motion for preliminary certification [in a collective action case] is the sending of a court-approved written notice to workers who may wish to join the litigation as individuals." *Id.* Thus, the decision to grant "preliminary certification" does not have a substantive impact on the form of the pending case. Rather, once "workers join a collective action complaint by filing opt-in forms," the case becomes a "collective action" without further court involvement. *Id.* Workers "create the collective action of their accord by filing opt-in forms." *Id.* In formal terms, a district court granting "preliminary certification is *neither necessary nor sufficient* for the existence of a [collective] action." *Id.*

As for "decertification," while the term refers to similar concepts in the class and collective action contexts, its use in the collective action context can be misleading. Specifically, claiming that a court can "decertify" a collective action "implies that a district court has some threshold role in creating a collective action." *Id.* That is incorrect. As discussed above, a collective action is created solely by workers filing opt-in forms, regardless of whether a court granted preliminary certification. *Id.* It is true, however, that a court can "decertify" a collective action by concluding "the plaintiffs cannot proceed collectively on the existing complaint because they are not similarly situated." *Id.* at 1102.

So concluding will result in the dismissal of the opt-in plaintiffs and the case will proceed on an individual basis.

After exploring this confusing terminology, the Ninth Circuit explained the "two-step approach" most courts have adopted for managing collective action litigation. *Id.* at 1110. The first step involves plaintiffs moving for preliminary certification. If the court grants preliminary certification, a "court-approved notice" is disseminated to the "putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Id.* at 1109. If other workers file opt-in forms, the case automatically becomes a collective action.

The second step usually "come[s] at or after the close of relevant discovery." *Id.* At this step, "[t]he employer can move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.* "If the motion for decertification is granted, . . . [t]he opt-in plaintiffs are dismissed without prejudice to the merits of their individual claims, and the original plaintiff is left to proceed alone. If the motion for decertification is denied, the collective action proceeds toward trial, at least on the questions justifying collective treatment." *Id.* at 1110. Crucially, the Ninth Circuit made no mention of plaintiffs needing to seek "final certification" before the case could proceed to trial on a collective basis. And given the governing framework, requiring such a motion would not make sense.[1] As explained by the Ninth Circuit, a collective action comes into existence and continues without court involvement. There simply is no requirement that plaintiffs take affirmative action to ensure a collective action will continue on a collective basis.

Apparently unaware of the Ninth Circuit's decision in *Campbell*, Swift believes a "final certification" order is necessary and points to *Rodriguez v. SGLC, Inc.*, 2012 WL 5705322 (E.D. Cal. Nov. 15, 2012). There, the court concluded "it is ultimately Plaintiffs'

---

[1] The Ninth Circuit approvingly cited to a decision by the Eleventh Circuit, *Mickles v. Country Club Inc.*, 887 F.3d 1270 (11th Cir. 2018). In that decision, the Eleventh Circuit noted the second step requires action by the defendant, not the plaintiff: "The second stage is precipitated by a motion for decertification from the defendant, which is typically filed after discovery is complete and the matter is ready for trial." *Id.* at 1276.

responsibility to seek final certification and demonstrate to the Court that Plaintiffs are similarly situated so that the case may proceed as a collective action." *Id.* at *4. Because the plaintiffs in that case had not filed such a motion, the court concluded the case could not "proceed as a FLSA collective action" and it dismissed the opt-in plaintiffs. *Id.* The conclusion in *Rodriguez*, however, is inconsistent with the thorough guidance provided in *Campbell*. Once additional workers file opt-in forms, the case is a collective action regardless of the defendants' or the court's view on the propriety of the case proceeding as such. The suit will continue as a collective action absent affirmative action by the court. *See, e.g.*, *Smith v. Metro Sec., Inc.*, No. CV 18-953, 2019 WL 6701311, at *7 (E.D. La. Dec. 9, 2019) (noting the failure to file a motion to decertify automatically provided the case would proceed to trial on a collective basis). While it may be permissible for a court to sua sponte decertify a collective action, Swift has not cited any authority *requiring* a court act sua sponte.[2]

Defense counsel's failure to cite or discuss *Campbell* is cause for serious concern. Indeed, this is not the first time during this case that defense counsel's behavior has been called into question by the Court. Previously, defense counsel altered a quote from the Supreme Court to make it appear Swift's position was in line with Supreme Court authority. (Doc. 205 at 26). In addition, defense counsel has switched positions regarding the reliability of Swift's records depending on which position was most advantageous at the time. (Doc. 246 at 2). At some point, defense counsel's behavior must stop, either voluntarily or through coercive sanctions. This Order should be read as a final warning to defense counsel.[3]

---

[2] Defendants cite an opinion from the Western District of Wisconsin that allegedly indicates "the duty to monitor FLSA collective certification is ongoing and must be revisited as necessary." (Doc. 251 at 2) (*citing Espenscheid v. DirectSat USA, LLC*, No. 09-CV-625-BBC, 2011 WL 2009967, at *4 (W.D. Wis. May 23, 2011)). But that opinion does not differentiate between class and collective actions. Moreover, in resolving the appeal in that case the Seventh Circuit continued to treat class and collective actions interchangeable. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013). The Ninth Circuit explicitly rejected the Seventh Circuit's approach of conflating class and collective actions. *Campbell*, 903 F.3d at 1110.

[3] The Court notes another district judge recently commented on the approach taken by defense counsel's firm in a similar case: "Frankly, you don't always litigate fairly and you frankly overlitigate. . . . So I take your comment with a grain of salt. At times you're great

Accordingly,

**IT IS ORDERED** the pretrial deadlines established at the January 14, 2020, status conference are **AFFIRMED**.

Dated this 22nd day of January, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge

---

and at times I raise my eyebrows." FedEx Wage Suit Judge Criticizes Littler For Overlitigating, *available at* https://www.law360.com/classaction/articles/1234397/fedex-wage-suit-judge-criticizes-littler-for-overlitigating (last visited January 22, 2020). Those comments are appropriate for the present case as well.

- 5 -