James A. Bloom (AZ SBN 026643)
Joshua G. Konecky (CA SBN 182897)
Nathan B. Piller (CA SBN 300569)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel:  (415) 421-7100
Fax:  (415) 421-7105
jbloom@schneiderwallace.com
jkonecky@schneiderwallace.com
npiller@schneiderwallace.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

Pamela Julian, on her own behalf, and on behalf of all others similarly situated,

Plaintiffs,

v.

Swift Transportation, Inc. and Swift Transportation Co. of Arizona, LLC.,

Defendants

Case No.: 2:16-CV-00576-ROS

**PLAINTIFFFS' NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: The Honorable Roslyn O. Silver

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND ATTORNEYS OF RECORD:

Plaintiffs hereby move the Court for an Order awarding reasonable attorneys' fees and costs to be paid out of the non-reversionary, common fund settlement of $14,000,000.00 ("Settlement"). The Settlement resolves hotly disputed minimum wage claims made under the Fair Labor Standards Act (FLSA) by the trainee truck drivers ("Trainees") who opted-in to this case. Plaintiffs have filed a separate motion for Court approval of this Settlement.

In this motion for reasonable attorneys' fees and costs, Plaintiffs request approval of attorneys' fees in the amount of one-third of the common settlement fund. Plaintiffs' counsel's lodestar for the work they have put into this case over the past five years is approximately $2,740,335.75. Thus, Plaintiffs' fee request represents a multiplier of approximately 1.7.

As discussed in the accompanying Memorandum of Points and Authorities, the attorneys' fees Plaintiffs request are reasonable and justified under both the percentage-of-the recovery approach and the lodestar-multiplier analysis. Among other factors, Plaintiffs' Counsel invested extensive time and effort into the case over the past five years; prosecuted the case on a fully contingent basis, despite unresolved questions of law and other substantial risks and uncertainties; and ultimately achieved exceptional results for the members of the Collective on their minimum wage claims. Additionally, Plaintiffs' fee request fits comfortably within the range of fee awards in comparable wage-and-hour class and collective actions, including within the Ninth Circuit. Plaintiffs' out-of-pocket costs are documented, reasonable and recoverable under applicable law as well.

This motion is based on the accompanying Memorandum of Points and Authorities; the Declaration of Joshua Konecky and the exhibits attached thereto; such oral argument as may be heard by the Court; and all other papers on file in this action.

//

//

//

//

1

Dated:  September 18, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

SCHNEIDER WALLACE
COTTRELL KONECKY LLP

By:    /s/ *Joshua G. Konecky*
       Joshua G. Konecky

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.    INTRODUCTION ................................................................................................. 1

II.   OVERVIEW OF COUNSEL'S WORK ON THE CASE ................................................ 3

    A.   Case Investigation and Complaint: September 2015 to December 29, 2015 ......... 3

    B.   Pre-Certification Discovery and Preparation of the Motion for Conditional
        Certification: December 30, 2015 to January 5, 2017 ............................................ 4

    C.   Motion for Conditional Certification and Further Merits Discovery: January 6,
        2017 to January 18, 2018 ........................................................................................ 5

    D.   Cross-Motions for Summary Judgment and Related Discovery: January 19, 2018
        to December 28, 2018 .............................................................................................. 7

    E.   Plaintiffs' Further Motions for Summary Judgment and Damages; and Swift's
        Procedural Motions: December 29, 2018 to December 27, 2019 .......................... 9

    F.   Trial Preparation and Pretrial Submissions: December 28, 2019 to May 8, 2020 11

    G.   Mediation and Settlement: May 9, 2020 to September 16, 2020 ......................... 12

III.  ARGUMENT .................................................................................................... 13

    A.   Plaintiffs are entitled to attorneys' fees under the FLSA ..................................... 13

    B.   The methods for evaluating attorneys' fees in common fund cases ..................... 13

    C.   Plaintiffs' fees are reasonable under the "Percentage of the Fund" method ........ 14

        1.  The exceptional benefit provided to the Collective justifies an upward
            adjustment ...................................................................................................... 15

        2.  The risks presented by the contingent nature of the recovery and the other
            circumstances of the case justify an upward adjustment ............................... 17

        3.  The difficulty of the issues involved and the skill required justify an upward
            adjustment ...................................................................................................... 18

        4.  The extensive labor required to litigate this case successfully in the face of
            Swift's vigorous opposition justifies an upward adjustment .......................... 18

        5.  The extent to which litigation precluded other employment justifies an upward
            adjustment ...................................................................................................... 19

D.    The "Lodestar-Multiplier" cross-check supports the reasonableness of Plaintiffs'
      fee request .................................................................................................. 19

      1.  Counsel's time was reasonably spent ............................................................ 19

      2.  Counsel's hourly rates are reasonable and have been consistently approved .. 20

      3.  A substantial multiplier is warranted ............................................................ 22

E.    Plaintiffs' requested cost reimbursements are reasonable .................................... 24

IV.  CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Ambrosino v. Home Depot U.S.A, Inc.*
2014 WL 3924609 (S.D. Cal. 2014) ................................................................... 14

*Been v. O.K. Industries, Inc.*,
2011 WL 4478766 (E.D. Okla. 2011) .................................................................. 23

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................ 15

*Blum v. Stenson*
465 U.S. 886 (1984) ............................................................................................ 20

*Boyd v. Bank of Am. Corp.*,
2014 U.S. Dist. LEXIS 162880 (C.D. Cal. Nov. 18, 2014) ................................. 15

*Browne v. P.A.M. Transp.*,
2020 U.S. Dist. LEXIS 135956, (W.D. Ark. July 31, 2020) ...................... 2, 14, 23

*Burkholder v. City of Fort Wayne*
750 F. Supp. 2d 990 (N.D. Ind. 2010) ................................................................ 14

*Bush v. GlobalTranz Enters.*,
2017 U.S. Dist. LEXIS 31332 (D. Ariz. Mar. 2, 2017) ....................................... 14

*Camacho v. Bridgeport Fin., Inc.*
523 F.3d 973 (9th Cir. 2008) .............................................................................. 20

*Chalmers v. City of L.A.*,
796 F.2d 1205 (9th Cir. 1986) ....................................................................... 19, 25

*Chalmers v. City of L.A.*,
808 F.2d 1373 (9th Cir. 1987) ............................................................................ 25

*Clover v. Shiva Realty of Mulberry, Inc.*
2011 WL 1832581 (S.D.N.Y. 2011) .................................................................... 13

*Cooley v. Indian River Transp. Co.*,
2019 U.S. Dist. LEXIS 79587 (E.D. Cal. May 10, 2019) .............................. 14, 16

*Cotchett, Pitre & McCarthy v. Universal Paragon Corp.*,
  187 Cal.App.4th 1405 (2010) ............................................................................. 14

*Dang v. Cross*
  422 F.3d 800 (9th Cir. 2005) .............................................................................. 20

*De Munecas v. Bold Food, LLC*,
  2010 WL 3322580 (S.D.N.Y. 2010) ................................................................... 14

*Delnoce v. GlobalTranz Enters., Inc.*,
  2018 WL 6505868 (D. Ariz. July 27, 2018) ...................................................... 14

*Faican v. Rapid Park Holding Corp.*
  2010 WL 2679903 (E.D.N.Y. 2010) ................................................................... 14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................ 22

*Haworth v. New Prime, Inc.*,
  Case No. 6:19-cv-03025-RK (W.D. Mo. 2020) ................................................. 15

*Helton v. Factor 5, Inc.*,
  2015 WL 428576 (N.D. Cal. 2015) ..................................................................... 13

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................ 19

*In re Apollo Grp. Sec. Litig.*,
  2012 U.S. Dist. LEXIS 55622 (D. Ariz. Apr. 20, 2012) .................................... 14

*In re Bluetooth Headset Prods. Liab. Litig.*
  654 F.3d 935 (9th Cir. 2011) .............................................................................. 13

*In re Cadence Design Systems, Inc. Securities and Derivative Litigation,*
  2012 U.S. Dist. LEXIS 56785 (N.D. Cal. April 23, 2012) ................................ 23

*In re Media Vision Tech. Sec. Litig.*,
  913 F.Supp. 1362 (N.D. Cal. 1996)..................................................................... 24

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998)......................................................................... 23

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,

2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ................................................................ 23

*In Re Pacific Enter. Sec. Litig.*,

47 F.3d 373 (9th Cir. 1995) ........................................................................................ 14

*In re VeriFone Holdings, Inc. Sec. Litig.*,

2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ........................................................... 23

*In Re Vitamins Antitrust Litig.*,

2001 WL 34312839 (D.D.C. 2001) .............................................................................. 14

*Ingalls v. Hallmark Mktg. Corp.*,

Dkt. No. 77 (C.D. Cal. Oct. 16, 2009) ....................................................................... 14

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,

2018 WL 2183253 (N.D. Cal. May 11, 2018) ............................................................. 23

*Jones v. Dominion Res. Servs.*,

601 F.Supp. 2d 756 (W.Va. 2009) .............................................................................. 22

*Julian v. Swift Transp. Co. Inc.*,

2019 U.S. Dist. LEXIS 221423 (D. Ariz. Dec. 27, 2019) ........................................... 10

*Julian v. Swift Transp. Co. Inc.*,

2019 U.S. Dist. LEXIS 90629 (D. Ariz. May 30, 2019) .............................................. 10

*Julian v. Swift Transp. Co. Inc.*,

360 F. Supp. 3d 932 (D. Ariz. 2018) ........................................................................... 9

*McKeen-Chaplin v. Provident Savings Bank, FSB*

2018 WL 3474472 (E.D. Cal.  2018) .......................................................................... 14

*Mexican Workers, et al. v. Arizona Citrus Growers*,

904 F.2d 1301 (9th Cir. 1990) .................................................................................... 15

*Morales v. City of San Rafael*,

96 F.3d 359, 363 n. 8 (9th Cir. 1996) .................................................................... 22, 25

*Nance v. May Trucking Co.*,

2014 U.S. Dist. LEXIS 5520 (D. Or. Jan. 15, 2014) .................................................... 3

*Nance v. May Trucking Co.*,

   685 Fed. Appx. 602 (9th Cir. 2017) ...................................................................... 7

*Newhouse v. Robert's Ilima Tours, Inc.*,

   708 F.2d 436 (9th Cir. 1983) ......................................................................... 13

*Nwabueze v. AT&T Inc.*,

   2013 U.S. Dist. LEXIS 169270 (N.D. Cal. Nov. 27, 2013) ................................. 15

*Petrone v. Werner Enterprises, Inc.*,

   2017 WL 510884 (D. Neb. Feb. 2, 2017) (Smith Camp, J.) ................................. 18

*Quintana v. HealthPlanOne LLC*,

   2019 U.S. Dist. LEXIS 124017 (D. Ariz. July 24, 2019) ............................... 14, 19

*Rabin v. Concord Assets Group*,

   1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ................................................... 23

*Reid v. I.C. Sys.*,

   2018 U.S. Dist. LEXIS 125663 (D. Ariz. July 26, 2018) (Silver, J.) ................... 22

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,

   779 F.3d 934 (9th Cir. 2015) ......................................................................... 13

*Salinas v. United States Xpress Enters., Inc.*,

   2018 U.S. Dist. LEXIS 50800 (E.D. Tenn. Mar. 8, 2018) ........................... 14, 15

*Singer v. Becton Dickinson and Company*,

   2010 WL 2196104 (S.D. Cal. 2010) ............................................................... 14

*Smilovits v. First Solar, Inc.*,

   No. 2:12-cv- 00555 (D. Ariz. June 30, 2020) ................................................... 21

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) ......................................................................... 24

*ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*,

   2020 U.S. Dist. LEXIS 60871 (D. Ariz. Apr. 7, 2020) ....................................... 21

*United Steelworkers of Am. v. Phelps Dodge Corp.*,

   896 F.2d 403 (9th Cir. 1990) ......................................................................... 20

*Van Vranken v. Atlantic Richfield Co.*,
  901 F.Supp. 294 (N.D. Cal. 1995) ............................................................. 14

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) .............................................. 13, 19, 22

*Wallace v. Countrywide Home Loans. Inc.*,
  2015 U.S. Dist. LEXIS 190929 (C.D. Cal. Apr. 17, 2015) ........................... 15

*Wilbur v. City of Mount Vernon*
  2014 WL 11961980 (W.D. Wash. 2014) ................................................ 20

*Williams v. MGM-Pathe Communications Co.*
  129 F.3d 1026 (9th Cir. 1997) .......................................................... 14

**Statutes**

29 U.S.C. § 216(b) .......................................................................... 13, 24

**Rules**

Fed. R. Civ. Proc. 30 ........................................................................... 4

**Regulations**

29 C.F.R. § 785.22 ...................................................................... 9, 12, 18

29 C.F.R. § 785.41 .................................................................... 3, 7, 9, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs' Counsel respectfully submit this application for an award of reasonable attorneys' fees and costs to compensate them for their extensive work over nearly five years in achieving a $14,000,000 non-reversionary, collective-action settlement to resolve the disputed minimum wage claims made under the Fair Labor Standards Act (FLSA) by the trainee truck drivers ("Trainees") who opted-in to this case.  The Settlement provides an excellent benefit to front-line workers who perform the critical freight transportation work on which our economy depends.

Plaintiffs' fee request represents one-third of the common settlement fund.  The fees sought here are reasonable compensation for the work performed, particularly given the exceptional result achieved for the Collective, the risk of nonpayment, and the skill and effort required to prosecute the case over nearly five years of litigation.  The out-of-pocket costs are also documented and reasonably incurred.

On December 28, 2018, the Court granted Plaintiffs' motion for summary judgment, holding that Defendant Swift Transportation, Inc. ("Swift") could not deduct any more than eight hours of time logged as sleeper berth per day from the Trainees' compensation.  On December 27, 2019, the Court held that Swift owed $7,839,834 to the Collective for unpaid sleeper berth time exceeding this 8-hour per day threshold.  Counsel's hard work to secure this relief also set the stage for a trial for the potential recovery of additional damages.  This is the context in which Plaintiffs' and their counsel achieved the substantial $14 million settlement.

But this excellent result did not come without extensive work in the face of considerable uncertainty.  While Plaintiffs' Counsel were confident in the merits of the case, bringing claims based on unpaid time logged as "sleeper berth" was decidedly risky. When the Complaint was first filed, there was no appellate authority addressing the compensability of sleeper berth time.  The only decision within the Ninth Circuit addressing unpaid sleeper berth time had held that it was not compensable under applicable Department of Labor (DOL) Regulations. *See Nance v. May*, *infra*. During the pendency of the case, a Ninth Circuit panel

affirmed this holding, *and* the DOL issued further guidance that sleeper berth time is presumptively non-compensable. While Plaintiffs successfully argued that *Nance* was distinguishable and that the recent DOL guidance did not merit deference, these authorities presented risk on appeal.   Still, Plaintiffs' Counsel devoted themselves to vigorously prosecuting the claims for nearly five years.

Furthermore, Defendants put up a staunch defense, including substantial discovery propounded on Collective Members, numerous depositions, and vigorous oppositions to Plaintiffs' motions for conditional certification and summary judgment, among other motions. If not for Plaintiffs' Counsel's considerable effort and skill in uncovering key evidence, developing winning legal arguments, and effectively opposing Swift's own motion for summary judgment, Class Members may have been left with no recovery at all.   The Settlement was reached only after substantial investigation, written discovery, 28 depositions, extensive motion practice, Plaintiffs' key victories on summary judgment and damages, trial preparation, and a full-day mediation.

Even after the proposed fees, costs, service award, and estimated administrative costs, the average net recovery is approximately $928 per Collective Member.   This recovery is excellent, particularly given the Collective Members' short tenures as Trainees—just approximately 6 weeks during Swift's standard, over-the-road training program.   Indeed, Collective Members will receive approximately <u>$145 per workweek</u>.   This net recovery is superior to analogous settlements.   For instance, in a recent class and collective action alleging very similar claims for unpaid sleeper berth time against one of Swift's competitors, the settlement resulted in less than an eighth of the average per-workweek recovery achieved here. *Browne v. P.A.M. Transp.*, 2020 U.S. Dist. LEXIS 135956, at *7 (W.D. Ark. July 31, 2020). The Court in *Browne* awarded the plaintiffs' attorneys fees amounting to 33% of the common fund, resulting in a multiplier of 2.96. *See* Section III.C.1, *infra*.  The reasoning in *Browne* is applicable here, where Plaintiffs have achieved a comparatively stronger recovery, but request fees that would result in a smaller multiplier.

Through September 16, 2020, the attorneys and staff at Schneider Wallace Cottrell

Konecky LLP have spent over 4,726 hours litigating the case, incurred $2,740,335.75 in lodestar fees, and advanced $308,153.88 in litigation expenses, on a completely contingent basis. Whether under a percentage-of-the recovery approach or lodestar-multiplier analysis, the fees sought are justified by the substantial time and effort of Plaintiffs' Counsel, the risk involved, and the strong result for the Collective. The out-of-pocket costs and expenses also are reasonable and well-documented. For these reasons and as further discussed below, Plaintiffs respectfully request that the Court grant the Motion.

## II.   OVERVIEW OF COUNSEL'S WORK ON THE CASE

### A. Case Investigation and Complaint: September 2015 to December 29, 2015

In the Fall of 2015, Plaintiffs' counsel began investigating complaints from Named Plaintiff Julian that Swift had failed to pay her minimum wage for time spent during her training period. Declaration of Joshua Konecky in Support of Motion for Reasonable Attorneys' Fees ("Konecky Decl.") at ¶ 47. Counsel thoroughly interviewed Named Plaintiff Pam Julian, analyzed the documentation she provided, and researched Swift's operations. *Id*.

Plaintiffs' Counsel also researched the legal landscape regarding similar claims based on unpaid "sleeper berth" time. *Id*. at ¶ 48. Plaintiffs' research indicated that minimum wage claims based on unpaid sleeper berth time carried significant risk. *Id*. When the Complaint was filed, there was no appellate authority addressing the compensability of sleeper berth time. The only decision within the Ninth Circuit held that, "as a matter of law, time spent in the sleeper berth, simply because the truck is moving, is not compensable." *Nance v. May Trucking Co*., 2014 U.S. Dist. LEXIS 5520, at *23 (D. Or. Jan. 15, 2014). The District Court in *Nance* relied on the Department of Labor (DOL) Regulation 29 C.F.R. § 785.41, which provides that an employee is "working while riding, except during bona fide meal periods or when he is permitted to sleep in adequate facilities furnished by the employer." *Id*. at *21-23.

Despite these challenges, Counsel began drafting the initial complaint, which was eventually filed on December 29, 2015. *Id*. at ¶ 50. The drafting process was meticulous,

requiring further legal research, multiple interviews with Named Plaintiff Julian, and follow-up research regarding Swift and its operations. *Id*.

During this first stage of the case, Plaintiffs' Counsel billed approximately 13 hours, for a lodestar of approximately $10,707. Konecky Decl. at ¶ 52.

## B.  Pre-Certification Discovery and Preparation of the Motion for Conditional Certification: December 30, 2015 to January 5, 2017

On May 31, 2016, the Court dismissed Plaintiff's overtime claim based on the FLSA's overtime exemption for employees governed by the DOT hours of service regulations. *See* Order (Dkt. 25) (citing 29 U.S.C. § 213(b)).  While Swift's motion was successful, litigating the motion assisted Counsel in further vetting the value of the claims at an early stage. Konecky Decl. at ¶ 53.  Following resolution of the pleadings, the parties conducted early written discovery. Plaintiff served sets of requests for production of documents and targeted interrogatories seeking production of Swift's corporate policies and procedures, organizational structure, and records of hours worked and compensation data for trainees. *Id*. at ¶ 54.  Swift provided limited discovery responses and information. *Id*.

In October 2016, Plaintiffs' Counsel engaged in meet and confer with Swift's counsel to push Swift to supplement its document production. *Id*. at ¶ 55.  Plaintiffs' Counsel's efforts proved to be time well-spent, as the meet-and-confer resulted in Swift's production of hundreds of pages of additional policy documents, including the standard "Student Driver Paperwork," instructional material used in driver orientation, employee handbooks, and other materials documenting Swift's common training requirements that proved important in demonstrating that the propriety of collective action treatment. *Id*.

In December of 2016, Plaintiffs took the depositions of five witnesses designated by Swift pursuant to Fed. R. Civ. Proc. 30(b)(6): Carl DiCharo, Victor Malchesky, Jack Workman, Joshua Grow, and Sarah Koogle. Konecky Decl. at ¶ 56.  Plaintiff's Counsel reviewed and analyzed hundreds pages of documents produced by Swift and prepared detailed outlines in preparation for the depositions. *Id*.  In the depositions, Swift's witnesses gave testimony elucidating the company's common compensation and operational policies relevant

to the minimum wage claims. *Id*.  The testimony was important in establishing the existence of systemic policies and practices, particularly given Swift's position that the claims could not be resolved on a common basis. *Id*.

Plaintiff's Counsel also interviewed other similarly situated Swift Trianees, who corroborated Plaintiff Julian's experiences. *Id*. at ¶ 57.  This was well worth the effort, as many such Trainees filed consents to join the action as party plaintiffs and others submitted sworn declarations in support of conditional certification. *Id*. The interviews also helped Counsel to better describe the work conditions and present the claims. *Id*.  By December 28, 2016, eighteen individuals had filed consents to join. *See* Ntc. of Filing, Dkt. 59.

During this second stage of the case, Plaintiffs' Counsel billed approximately 459 hours, for a lodestar of approximately $252,067. Konecky Decl. at ¶ 58.

### C. Motion for Conditional Certification and Further Merits Discovery: January 6, 2017 to January 18, 2018

On January 6, 2017, Plaintiffs filed their motion for conditional certification. *See* Mtn., Dkt. 60. Preparing the motion for conditional certification was a time-consuming task that required the involvement of partners, associates, and paralegals alike. It involved work tasks ranging from interviews with opt-in plaintiffs to document review, to legal research. Konecky Decl. at ¶ 59.  Counsel worked with several opt-in plaintiffs to prepare and finalize declarations attesting to their experiences working for Swift. *Id*.; Dkt. 60-10. Counsel also conducted substantial legal research and prepared the supporting papers. Konecky Decl. at ¶ 59.

On February 21, 2017, Swift filed its Opposition briefing, which consisted of two separate briefs: one opposing certification and the other opposing equitable tolling. *See* Dkt. Nos. 64-65. The opposition briefing was supported by declarations from Swift's corporate representatives and Swift truck drivers. *See* Dkt. 65-2.

To prepare Plaintiffs' reply briefing, Plaintiffs' Counsel took the depositions of two of Swift's truck driver witnesses who had submitted declarations in opposition to the motion for conditional certification. Konecky Decl. at ¶ 61. Deposing these witnesses demanded attorney time for preparation, travel, and taking the actual depositions, but the undertaking was

1   worthwhile. *Id*. For instance, Swift's Trainee declarant provided testimony supporting

2   Plaintiffs' position that they were effectively "on duty" while in the moving truck, even if they

3   were logged as off-duty under DOT safety regulations. *See* Reply (Dkt. 67) at 6:16-19, 8:15-

4   16 (trainee testifying that "in my mind I was driving even though I was in the passenger seat"

5   and agreeing that he was "living in the truck" while training).  As another example, Swift's

6   mentor declarant admitted that Trainees were performing work while logged as "sleeper

7   berth." *Id*. at 10:22-24. Plaintiffs filed their reply briefing on March 13, 2017. Dkt. 67.

8   While the motion for conditional certification was under submission, the parties

9   conducted further discovery on the merits. Swift issued requests for production of documents

10  and interrogatories on each of the twenty-one Trainees who had opted-in to date. Konecky

11  Decl. at ¶ 62.  The opt-in plaintiffs provided sworn responses and documents in response. *Id*.

12  For instance, Plaintiff Julian produced more than 700 pages of documents.  *Id*. Plaintiffs'

13  Counsel's extensive work interviewing the opt-in plaintiffs and assisting with their discovery

14  responses served as valuable preliminary preparation for subsequent depositions. *Id*.  The

15  documents produced by the opt-in plaintiffs also were helpful in the merits phase of the case.

16  *Id*.  For instance, Plaintiff Julian produced DOT driver log records showing extensive unpaid

17  time logged as "sleeper berth." *Id*.

18  Between July and November of 2017, Swift took the depositions of eleven opt-in

19  plaintiffs. *Id*. at ¶ 63.  Plaintiffs' Counsel devoted substantial time to thoroughly preparing

20  each of these Collective Member witnesses, including with in-person preparation sessions and

21  mock deposition questioning. *Id*. Counsel for Swift conducted lengthy questioning of the

22  declarants, who held up and provided thorough testimony. *Id*.

23  Plaintiffs' Counsel took the depositions of nine Swift supervisors and trainers, including

24  Mentors, Driver Leaders, and a human resources representative. *Id*. at ¶ 64.  Traveling,

25  preparing for, and taking the depositions themselves was time-consuming, but these efforts

26  produced evidence helpful to Plaintiffs' case. For instance, Plaintiff's Counsel elicited first-

27  hand accounts from Swift's witnesses regarding the difficulty of getting restful sleep in a

28  moving sleeper berth. *Id*.

On August 30, 2017, the Court issued an order granting conditional certification, equitably tolling the statute of limitations, and ordering that notice of the case be distributed to the putative collective. Order, Dkt. 103.

Thereafter, the parties met and conferred regarding the procedural details of the notice process. Konecky Decl. at ¶ 66.  Plaintiffs' Counsel advocated for a website-based platform to allow individuals to opt-in electronically upon receiving the notice by email, given the likelihood that many truck drivers would be away from home and unable to retrieve the paper opt-in form and mail it. *Id.* Counsel also advocated for a text message notice, for the same reasons. *Id*.  On October 16, 2017, the Court approved the parties' stipulation regarding the procedures for sending notice to the putative collective, which included Plaintiff's Counsel's proposal for the website portal and text message notice. Order, Dkt. 120.  Plaintiffs' efforts in meet and confer proved effective.  By close of the 60-day opt-in period on January 16, 2018, 9,578 trainees had submitted consents to join this action as party plaintiffs. Konecky Decl. at ¶ 66; *see also* Dkt. Nos. 10, 38, 40 41, 42, 43, 47, 50, 51, 52, 54, 55, 56, 57, 58, 59, 62, 68, 69, 131-151 (consents to join filed with Court).

During this third stage of the case, Plaintiffs' Counsel billed approximately 880 hours, for a lodestar of approximately $560,026. Konecky Decl. at ¶ 67.

**D.  Cross-Motions for Summary Judgment and Related Discovery: January 19, 2018 to December 28, 2018**

While Plaintiffs' motion for conditional certification was pending, the Ninth Circuit affirmed the District Court's ruling in the analogous case *Nance*, *supra*, holding that sleeper berth time is not compensable under 29 C.F.R. § 785.41, without limitation. *Nance v. May Trucking Co.*, 685 Fed. Appx. 602, 605 (9th Cir. 2017).  While *Nance* is unpublished and distinguishable, it still posed a challenge for Plaintiffs. Konecky Decl. at ¶ 68.

In January 2018, the Plaintiffs' Counsel continued their meet and confer regarding merits discovery, including timekeeping records, DOT driver logs, compensation data, and materials pertaining to the first day of Swift's orientation program. *Id*. at ¶ 69.  Following extensive meet and confer, including an in-person conference at defense counsel's offices,

Swift produced more than a thousand pages of additional documents, as well as driver log and compensation data covering most of the opt-in Plaintiff Collective. *Id*.  Counsel's efforts in meet and confer proved valuable, as the compensation data and driver log records were critical to Plaintiffs' success on the forthcoming motions for summary judgment and damages. *Id*.

On May 23, 2018, Plaintiffs' Counsel traveled to Memphis, Tennessee to take the deposition of Mike Jackson, Swift's Corporate designee witness on the subject of dispatching, routing and trip planning. *Id*. at ¶ 70.  Counsel prepared extensively for the deposition by reviewing numerous documents, conducting legal research, and compiling a detailed outline. This was time well-spent, as Mr. Jackson provided testimony pertinent to the question of whether trainees were "on duty" under applicable DOL regulations even if they were logged as "off duty" or "sleeper berth" under DOT regulations, also was central to Plaintiffs' summary judgment arguments. *Id*.

On May 31, 2018, Plaintiffs disclosed their expert witnesses: a forensic accountant (David Breshears) to provide testimony regarding damages and trucking industry professional (John Levickas) to provide testimony on the merits. *Id*. at ¶ 71.  Counsel spent extensive time communicating with Mr. Breshears and Mr. Levickas regarding Defendants' policies, procedures, and timekeeping and compensation data, and gathering the evidence they needed to present their expert opinions. *Id*.

On May 8, 2018, the parties filed a notice updating the court regarding discovery and settlement discussions in which Swift confirmed that it was not interested in mediating the case at that time. *See* Dkt. 129. at 4:9-10.

On August 10, 2018, the parties filed their cross-motions for summary judgment. Dkt. Nos. 157-167. Preparing the motion for summary judgment was a formidable undertaking that demanded the coordinated efforts our attorneys, paralegals, and other staff members alike. Konecky Decl. at ¶ 73.   It encompassed an array of work tasks, including client outreach, legal research, document review, and a multi-step drafting process, among others. *Id*.

The cross-motions presented difficult legal questions that required extensive legal research and precision in drafting and oral argument.   For instance, the cross-motions

addressed the interplay of two DOL regulations (29 C.F.R. §§ 785.22 and 785.41) and their impact on the compensability of sleeper berth time, as well as whether DOL guidance interpreting these regulations was entitled to deference.  Plaintiffs submitted 35 exhibits with their opening briefing. Dkt. Nos. 159-2 to 159-3. Swift submitted 27 exhibits. Dkt. Nos. 161-1 through 167-12.

While the parties were preparing their opposition briefs, Swift once again confirmed that it was not interested in mediation. Dkt. 174 at 3:19-21.

On September 10, 2018, the parties submitted their opposition briefing. Dkt. Nos. 177-193.  Preparing the Opposition papers was similarly time-consuming and complex. Konecky Decl. at ¶ 77.  Plaintiffs submitted 36 exhibits in opposition, Dkt. Nos. 192-3 through 192-38, as well as a compendium of illustrative declarations from 11 opt-in plaintiffs. Dkt. 192-1.  The parties submitted their respective reply briefs on September 25, 2018. Dkt. Nos. 197-198.  The Court held argument on December 19, 2018. Konecky Decl. at ¶ 77.  Counsel put in extensive time in advance of the hearing to prepare the oral arguments. *Id*.

On December 28, 2018, the Court granted Plaintiffs' motion for summary judgment in part, and denied Defendants' motion. *Julian v. Swift Transp. Co. Inc.*, 360 F. Supp. 3d 932, 952 (D. Ariz. 2018).  In granting Plaintiffs' motion in part, the Court cited Plaintiffs' evidence, including Swift policy documents and deposition testimony, and the illustrative opt-in Plaintiff declarations. *See id*. at 938 ("Declarations from certain plaintiffs paint a consistent picture of working, or being ready to be called upon to perform work, around the clock.").  Based on this and other evidence, the Court determined that 29 C.F.R. § 785.22 applied to the trainees because they were continuously on-duty, and concluded that "Swift was entitled to deduct no more than eight hours per day as time Plaintiffs were allowed to sleep." *Id*. at 947, n.12, 952.

During this fourth stage of the case, Plaintiffs' Counsel billed approximately 1,403 hours, for a lodestar of approximately $724,385. Konecky Decl. at ¶ 79.

### E. Plaintiffs' Further Motions for Summary Judgment and Damages; and Swift's Procedural Motions: December 29, 2018 to December 27, 2019

On January 18, 2019, Plaintiffs filed their second motion for summary judgment,

1   seeking rulings that the first day of Swift's three-day orientation and time trainees spent

2   studying in preparation for end-of-training examinations while in the sleeper berth were

3   compensable. Dkt. 213.  This second motion for summary judgment also required extensive

4   document review and drafting, which made for another substantial commitment of time and

5   effort by Plaintiffs' Counsel. Konecky Decl. at ¶ 80.  The motion also presented difficult legal

6   issues regarding when orientation attendees can be considered "employees" under the FLSA,

7   which required Counsel to devote substantial time to legal research. *Id*.  Plaintiffs submitted

8   21 exhibits in support of the motion, including orientation schedules and PowerPoints that

9   Swift produced only after Plaintiffs' Counsel's successful meet and confer efforts. *See* Dkt.

10  Nos. 213-2 through 213-22.  The motion was fully briefed.  Konecky Decl. at ¶ 80.

11        On May 30, 2019, the Court issued an order granting Plaintiffs' motion as to the

12  compensability of study time, but deferring the orientation pay claim to trial. *Julian v. Swift*

13  *Transp. Co. Inc.*, 2019 U.S. Dist. LEXIS 90629, at *12, *18 (D. Ariz. May 30, 2019).

14        On June 10, 2019, Plaintiffs filed their motion for award of damages for "sleeper

15  berth" time in excess of 8 hours per day. Dkt. 223.  Preparing the motion required another

16  substantial commitment of time from Plaintiffs' Counsel to conduct legal research regarding

17  the award of damages on summary judgment, analyze Swift's DOT log and compensation

18  data, communicate with their expert witness on damages, and draft the brief. Konecky Decl.

19  at ¶ 82; *see also* Dkt. Nos. 234, 237.  Counsel's extensive work again proved worthwhile. On

20  December 27, 2019, the Court granted Plaintiffs' motion, holding that Plaintiffs were entitled

21  to damages attributable to unpaid sleeper berth time over 8 hours per day, in the amount of

22  $7,839,834. *Julian v. Swift Transp. Co. Inc.*, 2019 U.S. Dist. LEXIS 221423, at *12-*18, *21

23  (D. Ariz. Dec. 27, 2019).

24        Meanwhile, Swift filed a motion for certification of an interlocutory appeal of the

25  Court's order granting Plaintiffs' first motion for summary judgment regarding the

26  compensability of sleeper berth time over 8 hours per day. Dkt. 221.  Plaintiffs opposed the

27  motion. Dkt. 228. Plaintiffs' Counsel again had to devote time to legal research and drafting

28  to prepare the opposition briefing. Konecky Decl. at ¶ 83.

In the meantime, the DOL issued new regulatory guidance opining that sleeper berth time was not compensable. WHD Opinion Letter FLSA2019-10, 2019 WL 3345452 (July 22, 2019).  Plaintiffs' Counsel prepared briefing regarding the guidance as well as recent Supreme Court precedent addressing deference to such opinions under the *Auer* doctrine. Dkt. Nos. 239, 240, 242.  On December 10, 2019, the Court ruled there were not substantial grounds for difference of opinion and that the opinion letter was not entitled to deference. *See* Dkt. 245.

At Swift's behest, Plaintiffs also prepared briefing regarding their trial plan. Dkt. Nos. 225, 233.  This further briefing commanded still more of Plaintiffs' Counsel's time to review the evidentiary record and compile a detailed trial plan that demonstrated how FLSA violations would be adjudicated on a collective basis. Konecky Decl. at ¶ 85.  These efforts paid off, as the Court issued an order rejecting Swift's position regarding whether there could be a collective action trial. *See* Dkt. 246, at 10:22-12:16.

During this fifth stage of the case, Plaintiffs' Counsel billed approximately 634 hours, for a lodestar of approximately $392,683. Konecky Decl. at ¶ 86.

**F. Trial Preparation and Pretrial Submissions: December 28, 2019 to May 8, 2020**

Following the motion practice in 2019, the parties briefed the issues remaining for trial and the burdens of proof that would apply. Dkt. 248.  On January 14, 2020, the Court held a status conference to address trial management and the schedule for pretrial submissions, during which Swift again contended that the case could not be tried on a collective basis, this time because the Court had not finally certified the action for collective treatment. *See* Dkt. 250. This required Plaintiffs' Counsel to devote time to briefing Swift's "final certification" arguments, *see* Dkt. Nos. 251, 252, which was successful. Dkt. 254.

Thereafter, the parties prepared their joint pretrial submissions. Konecky Decl. at ¶ 89. Preparing the pretrial submissions was a time-consuming task that required Plaintiffs' Counsel to conduct legal research on evidentiary and merits issues pertaining to the motions *in limine*, the proposed jury instructions, and the trial memorandum of law; conduct numerous witness interviews to prepare their witness list; review the evidentiary record to prepare their exhibit

list; and work extensively with counsel for Swift on the joint submissions. *Id*.  On April 20, 2020, the parties filed their joint pretrial order, proposed jury instructions, juror questionnaire, and verdict forms. Dkt Nos. 262, 264, 265, 270, 271.  Plaintiffs' trial witness list included more than 100 opt-in plaintiffs with whom Counsel had conducted thorough interviews in preparation for trial. Konecky Decl. at ¶ 89; Appendix 1 to Joint PTO (Dkt. 262) at pp. 2-30. In addition, the parties each filed their respective trial memoranda of law. Dkt. Nos. 267, 272. Swift filed four motions *in limine*, *see* Dkt. Nos. 263, 266, 268, 273, and Plaintiffs filed eight motions *in limine* as an omnibus filing. Dkt. 269.

During the parties' meet and confer regarding the joint proposed jury instructions, disputes again arose regarding which party bears the burden of proof under 29 C.F.R. § 785.22 and the sufficiency of evidence required for proof on a collective basis. Konecky Decl. at ¶ 90.  Thereafter, Swift requested that the Court permit further summary judgment briefing to address the dispute. *See* Dkt. 275.  Plaintiffs opposed Swift's request. *Id*.  On May 8, 2020, the Court denied Swift's request, and reiterated its prior holding that the burden at trial would be "on Swift to establish it was entitled to exclude the eight-hour sleeping period." Dkt. 276, at 1:21-27.  In the same order, the Court vacated the prior trail date of August 11, 2020 and reset it for October 6, 2020 to allow the parties to mediate the case. *Id*. at 3:2-3.

During this sixth stage of the case, Plaintiffs' Counsel billed approximately 497 hours, for a lodestar of approximately $319,336. Konecky Decl. at ¶ 91.

### G. Mediation and Settlement: May 9, 2020 to September 16, 2020

On August 10, 2020, the parties participated in a full-day mediation conducted by Antonio Piazza, a nationally recognized mediator experienced in class and collective action cases. Konecky Decl. at ¶ 92.  Plaintiffs' Counsel worked with the Mr. Breshears to prepare a damages analysis using Swift's DOT log and compensation data, applying the same methodology as that previously approved by the Court. *Id*.  Counsel also prepared a comprehensive mediation brief, which they circulated with Defendants before the mediation. *Id*.  In addition, Plaintiffs' Counsel conducted further interviews with numerous opt-in plaintiffs who were on Plaintiffs' trial witness list in preparation for the mediation. *Id*.  Counsel

worked with these individuals to prepare more than 20 sworn declarations, which they provided to Mr. Piazza in advance of the mediation. *Id*. The case did not settle at the mediation, but the parties made significant progress in narrowing the gap between their positions. *Id*.  At the close of the mediation, Mr. Piazza made a mediator's proposal. *Id*.  On August 12, 2020, the Parties accepted Mr. Piazza's mediator's proposal. *Id*.  Since then, Counsel has worked with Swift's counsel on the settlement papers and the Settlement Administrator on the notice plan, and has prepared motion papers concerning settlement approval. *Id*. at ¶ 93.

During this seventh and final stage of the case, Plaintiffs' Counsel billed approximately 838 hours, for a lodestar of approximately $481,130. *Id*. at ¶ 94.

## III.   <u>ARGUMENT</u>

### A.  Plaintiffs are entitled to attorneys' fees under the FLSA

The FLSA provides reasonable attorneys' fees and costs to be paid by the defendant. 29 U.S.C. § 216(b).  This serves the FLSA's purpose of encouraging private counsel to represent employees seeking unpaid wage through collective action. *Helton v. Factor 5, Inc.*, 2015 WL 428576, at \*4 (N.D. Cal. 2015) *Clover v. Shiva Realty of Mulberry, Inc.*, 2011 WL 1832581 at \*4 (S.D.N.Y. 2011); *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983).   Plaintiffs here are prevailing parties entitled to recover attorneys' fees and costs because they secured a judicially enforceable settlement that achieves a benefit sought by the suit. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 433 (1983), *superseded by statute on other grounds*.

### B.  The methods for evaluating attorneys' fees in common fund cases

Where a settlement produces a common fund for the benefit of the entire class there are two methods of calculating attorneys' fees: (1) the lodestar/multiplier method, and (2) the percentage of recovery method. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 941 (9th Cir. 2011). The Court can choose either method and/or conduct a cross-check using both methods. *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir. 2015); *see also Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002).

**C.  Plaintiffs' fees are reasonable under the "Percentage of the Fund" method**

Plaintiffs are seeking a fee award of $4,666,666.67, which is one-third (1/3) the Gross Settlement Amount of $14,000,000.  Fee requests at and above one-third of the common fund are routinely approved by Courts in the Ninth Circuit and by the District of Arizona, including in FLSA cases. *See, e.g.,* Newberg on Class Actions at §11:24; Manual for Complex Litigation at §14:6; *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297-98 (N.D. Cal. 1995) ("Class Counsel have also cited 73 district court opinions in which fees in the range of 30-50 percent of the common fund were awarded."); *In Re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33% fee award); *Williams v. MGM-Pathe Communications Co.* 129 F.3d 1026, 1027 (9th Cir. 1997) (33% of total fund); *In re Apollo Grp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 55622, at *23-25 (D. Ariz. Apr. 20, 2012) (33% of common fund); *Delnoce v. GlobalTranz Enters., Inc.*, 2018 WL 6505868, at *2 (D. Ariz. July 27, 2018) (33% award in FLSA case); *Bush v. GlobalTranz Enters.*, 2017 U.S. Dist. LEXIS 31332, at *8-9 (D. Ariz. Mar. 2, 2017) (same).[1]

Moreover, courts have recently approved fee requests of one third or more of the common fund in analogous cases alleging minimum wage claims based on unpaid sleeper berth time. *See, e.g., Browne*, 2020 U.S. Dist. LEXIS 135956 at *7 (one third of the common fund); *Salinas*, 2018 U.S. Dist. LEXIS 50800 at *21 (41% of the common fund); *Cooley*, 2019 U.S. Dist. LEXIS 79587 at *23 (one third of the common fund).

While 25 percent is regarded as the "benchmark" in common-fund cases. *Quintana v. HealthPlanOne LLC*, 2019 U.S. Dist. LEXIS 124017, at *19-22 (D. Ariz. July 24, 2019)

---

[1] *See also In Re Vitamins Antitrust Litig.*, 2001 WL 34312839 (D.D.C. 2001) (34.6% of $365 million recovery); *Cotchett, Pitre & McCarthy v. Universal Paragon Corp.*, 187 Cal.App.4th 1405, 1421 (2010) (contingency fees typically range from 33 to 40% of class benefit); *McKeen-Chaplin v. Provident Savings Bank, FSB*, 2018 WL 3474472, at *3 (E.D. Cal., July 19, 2018) (33%); *Ambrosino v. Home Depot U.S.A, Inc.*, 2014 WL 3924609, at *1-2 (S.D. Cal. Aug. 11, 2014) (33%); *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (33%); *Faican v. Rapid Park Holding Corp.*, 2010 WL 2679903 (E.D.N.Y. July 1, 2010) (33%); *Wren*, 2011 WL 1230826, at *29 (42%); *Singer v. Becton Dickinson and Company*, 2010 WL 2196104 at *8 (S.D. Cal. 2010) (33%); *Ingalls v. Hallmark Mktg. Corp.*, Dkt. No. 77 (C.D. Cal. Oct. 16, 2009) (33%); *De Munecas v. Bold Food, LLC*, 2010 WL 3322580, at *9 (S.D.N.Y. 2010) (33%).

(citing *Six (6) Mexican Workers, et al. v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)), the benchmark can be adjusted upwards based on the particular circumstances of the case. *Mexican Workers*, 904 F.2d at 1311.  In determining whether an upward adjustment is warranted, courts look to "the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck." *Boyd v. Bank of Am. Corp*., 2014 U.S. Dist. LEXIS 162880, at *23 (C.D. Cal. Nov. 18, 2014) (citing *Vizcaino*, 290 F.3d at 1048-50); *Wallace v. Countrywide Home Loans. Inc.*, 2015 U.S. Dist. LEXIS 190929, at *26 (C.D. Cal. Apr. 17, 2015); *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 260 (N.D. Cal. 2015) (citing *Nwabueze v. AT&T Inc*., 2013 U.S. Dist. LEXIS 169270, at *10 (N.D. Cal. Nov. 27, 2013).

### 1.   The exceptional benefit provided to the Collective justifies an upward adjustment

The benefit achieved here represents an excellent result for the Collective and superior to FLSA settlements in highly analogous cases. Here, the net per workweek recovery (after all fees and costs) is approximately $928 per person for approximately 6 weeks of over-the-road training, and $145 per workweek. *See* Declaration of Nathan Piller in support of Motion for Approval of Settlement ("Piller Decl.") at ¶ 42.  By comparison, in *Browne*, 2020 U.S. Dist. LEXIS 135956, a similar collective and class action alleging unpaid sleeper berth time, the "average employee, who worked for [the defendant] for 1 year, will receive approximately $969.57[.]" *Id*. at *4.  Thus, the average per-workweek recovery over the 52 weeks in a year in *Browne* was $18.64—approximately 8 times less than the recovery here. Still, given the difficulty and risks of the sleeper berth claims, the Court in *Browne* approved counsel's fee request for one-third of the common fund, which resulted in a multiplier of 2.96. *Id.* at *6-8; Exh. Y, *Browne v. P.A.M. Transp*., Brief in support of attorneys' fees (Dkt. 298) at p. 27.

As another recent example, a subclass alleging claims for unpaid sleeper berth time in *Haworth v. New Prime, Inc*., Case No. 6:19-cv-03025-RK (W.D. Mo. 2020) would receive approximately $22.80 per covered workweek under the settlement. *See* Exh. Z, Crimmins Decl. (Dkt. 100-3) at p. 4; *see also* Exh. AA, Dkt. 103 (preliminarily approving settlement).

Similarly, in the analogous case *Salinas v. United States Xpress Enters., Inc*., 2018 U.S. Dist. LEXIS 50800 (E.D. Tenn. Mar. 8, 2018), trainee truck drivers recovered approximately $250 on average for FLSA sleeper berth and other claims covering a training period of a similar length to the training period at issue here. *See id*. at *9.  The Court awarded the *Salinas* Plaintiffs' Counsel fees amounting to 41% of the common fund. *Id*. at *21.

As still another example, in the analogous case *Cooley v. Indian River Transp. Co.*, 2019 U.S. Dist. LEXIS 79587 (E.D. Cal. May 10, 2019), the Court approved a settlement of similar wage and hour claims accrued over 6 year period and average recovery of $450.14, and granted the Plaintiffs' fee request for one third of the common fund. *Id*. at *20-23.  These are just a few comparators illustrating the strength of the recovery here.

The $14 million all-in recovery also compares favorably with Plaintiffs' estimates of Swift's exposure, based on the analysis prepared by Plaintiffs' forensic accounting expert.  As one point of comparison, the $14 million all-in settlement amount is *higher* than Defendants' exposure for the minimum wage damages for unpaid "sleeper berth" time in excess of 8 hours per day ($7,839,834), even if reasonable attorneys' fees ($4,666,666) are added to Swift's exposure. Piller Decl. at ¶ 57.  As another comparison, the $14 million all-in recovery is still approximately 68% of Swift's exposure of approximately $20,346,334 for unpaid "sleeper berth" time in excess of 8 hours per day, even if liquidated damages were awarded on top of these damages and attorneys' fees. *Id*.

Moreover, even if minimum wage damages attributable to <u>all</u> unpaid sleeper berth time and <u>all</u> unpaid time at the first day of orientation, *and* attorneys' fees, were all awarded,  the $14 million all-in recovery still would represent 50% of Swift's exposure of approximately $27,845,748. *Id*. ¶ 58.  And, even if Plaintiffs were awarded *all* the possible liquidated damages in addition to this amount, the $14 million all-in recovery would still represent more than 27% of Swift's total, outside exposure of $51,024,830. *Id*.  This figure represents a best-case scenario where Plaintiffs prevail on all their claims at trial, prove up all their alleged damages, defeat Swift's good faith defense for liquidated damages, and defeat Swift's appeal on multiple issues. *Id*.  The $14 million all-in recovery is an excellent result in light of the

potential exposure as moderated by significant risks and delays of further litigation and appeal.

### 2. The risks presented by the contingent nature of the recovery and the other circumstances of the case justify an upward adjustment

Plaintiffs' Counsel have been the only counsel to represent the Collective in this matter and have borne the entire risk and costs of litigation for five years purely on a contingency basis.  Konecky Decl. at ¶¶ 102-106. Plaintiffs' Counsel have spent approximately 4,726 hours investigating, analyzing, researching, litigating, and negotiating a favorable resolution of this case, and have incurred $308,153.88 in necessary litigation expenses. *Id*. at ¶ 102.

Plaintiffs' Counsel bore the substantial risk of an uncertain outcome in prosecuting this case on a contingency fee basis for five years, as well as the difficulties and delay inherent in such litigation. *Id*. at ¶¶ 102-106.

This case was particularly risky given the uncertain legal landscape in which it was filed and the emergence of authority during the pendency of the case that is contrary to Plaintiffs' position.  As discussed in Plaintiffs' motion for settlement approval, Plaintiffs had to overcome Swift's argument that time spent in the sleeper berth is not compensable under 29 C.F.R. 785.41, which had the support of two district court decisions at the time the case was filed, the arguable support of the Ninth Circuit's unpublished decision in *Nance* (which came down while the motion for conditional certification was pending), and new guidance from the Department of Labor issued after summary judgment. *See* Mtn for Approval of Settlement at pp. 18-23.  While these formidable challenges may have compelled many other attorneys to settle early or even dissuade them from bringing the case altogether, Plaintiffs' Counsel here continued to press the important minimum wage claims of the Collective for five years. Counsel invested thousands of hours into discovery, depositions, motion practice, and trial preparations on a completely contingent basis to eventually secure the $14,000,000 Settlement.  They methodically secured the common evidence, company admissions, and legal rulings that allowed them to prevail on their claims and achieve a result that is superior to the recoveries obtained in comparable cases.  Nonetheless, the uncertain legal landscape and

contingent nature of the litigation meant they could have walked away with nothing, despite the substantial time and resources committed to the case.  Konecky Decl. at ¶¶ 104-106.

### 3.    The difficulty of the issues involved and the skill required justify an upward adjustment

This case presented an array of complex issues, ranging from the relationship between DOL and DOT regulations, to the appropriate level of deference to agency opinion letters, to calculating damages using reasonable extrapolation from incomplete timekeeping and compensation records.

Moreover, the compensability of sleeper berth time for truck drivers—the central issue in this case—remains an unsettled area of law.  Among the complexities presented by this issue is a seeming conflict between DOL Regulations, which requires a complex textual analysis and consultation of regulatory guidance to resolve.  Not surprisingly, courts have reached differing conclusions.  For example, Swift has relied on *Petrone v. Werner Enterprises, Inc*., 2017 WL 510884 (D. Neb. Feb. 2, 2017) (Smith Camp, J.), which held that sleeper berth time is presumptively non-compensable. *Id*. at *23.  Yet, in 2015, the same court entered summary judgment in the plaintiffs' favor, holding that 29 C.F.R.§ 785.22 required trucking companies to pay over-the-road drivers for sleeper berth time in excess of 8 hours per day. 121 F.Supp.3d 860, 869 (D.  Neb. 2015) (Strom,  J.). The 2015 holding was only vacated after a new judge was assigned. This is just one illustration of the legal complexity presented by the claims here. *See Salinas*, 2018 U.S. Dist. LEXIS 50800, *13 ("Plaintiffs' sleeper berth claim is so legally complex that it resulted in inconsistent results *in the same court.*").

### 4.    The extensive labor required to litigate this case successfully in the face of Swift's vigorous opposition justifies an upward adjustment

Swift asserted a vigorous defense, including stiff resistance to discovery, a forceful opposition to Plaintiffs' motion for conditional certification (which was supported by several witness declarations), staunch opposition to Plaintiffs' summary judgment motions, a cross-motion for summary judgment of its own, a motion for interlocutory appeal, and fervent opposition to Plaintiffs' proposed jury instructions and other positions in trial matters.

Defendants also took the depositions of eleven declarant class members. Swift showed no interest in mediation until after key merits issues and a substantial component of damages had been resolved in Plaintiffs favor, when trial was mere weeks away. *See* Konecky Decl. at ¶¶ 72. 75. And, going to trial would have added years to this case because of the inevitable appeal.

### 5.      The extent to which litigation precluded other employment justifies an upward adjustment

There are only so many cases that Plaintiffs' Counsel can take at any one time. Konecky Decl. at ¶ 102. Thus, there were other meritorious cases presented to Plaintiffs' Counsel that would have generated substantial fees, but were declined during the pendency of this action, to devote the attention necessary to achieve the highly favorable results in the Settlement. *Id*.

### D. The "Lodestar-Multiplier" cross-check supports the reasonableness of Plaintiffs' fee request

District courts have discretion to "appl[y] the lodestar method as a cross-check of the percentage method." *Quintana*, 2019 U.S. Dist. LEXIS 124017, at *19.  If the court does so, "the primary basis of the fee award remains the percentage method," but "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id*.

### 1.      Counsel's time was reasonably spent

Counsel undertook significant work to prosecute this case. This included investigations; drafting of pleadings; legal research on an array of complex issues; numerous fact-intensive interviews of the Opt-in Plaintiffs; lengthy written discovery; 28 depositions; meet-and-confers to resolve multiple discovery disputes; extensive motion practice, including the motion for conditional certification, hotly contested cross-motions for summary judgment, a second motion for summary judgment, a motion for damages, and opposition to many motions by Swift; trial preparation; and settlement negotiations. *See generally* Konecky Decl.  This work was critical to gathering the evidence and developing the legal analysis to prevail on the claims, and was necessitated by Swift's resistance and opposition at every stage.

Generally, hours are reasonable if they were "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a

fee-paying client." *Hensley*, 461 U.S. at 431.   A breakdown of the hours of work and corresponding lodestar on a timekeeper by timekeeper basis is presented in the Konecky Declaration. As that Declaration makes clear, the time reported was devoted to necessary and worthwhile tasks.   Indeed, Counsel's extensive work on this case resulted in key victories at summary judgment and an award of damages, among other successes, without which the excellent result achieved here would not have been possible.

Additionally, tasks were delegated to associate attorneys or legal assistants when reasonable, and skilled associate attorneys were tasked with work projects that customarily are handled by partners with higher billing rates. Konecky Decl. at ¶¶ 33-42.

Furthermore, Counsel has exercised billing judgment by removing all entries by individuals who billed fewer than 25 hours on the case. *Id.* at ¶ 44.

## 2.    Counsel's hourly rates are reasonable and have been consistently approved

The general principle for determining the reasonableness of hourly rates is that they "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). Rates are reasonable if they fall within the range of prevailing market rates in the relevant community. *Wilbur v. City of Mount Vernon*, 2014 WL 11961980, at *1 (W.D. Wash. Apr. 15, 2014) (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory to establish the reasonableness of hourly rates. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiffs' Counsel sets their rates on an annual basis through a process of continual monitoring of prevailing market rates charged by both defense and plaintiffs' law firms, for individuals with similar levels of skill and experience who are doing comparable work as its attorneys and staff. *See* Konecky Decl. at ¶ 27.   The Konecky Declaration sets forth the rates for the various individual billers in this case. *Id.* at ¶ 44.   The principal associate on the case, Nathan Piller, has a rate of $680 per hour, while the only partner submitting time for this case,

Joshua Konecky, has a rate of $925 per hour. *Id.*

The rates charged by Plaintiffs' counsel are comparable to and within the range of rates approved by courts in the District of Arizona and charged by attorneys for complex civil litigation performed in the Phoenix area. For instance, in *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, 2020 U.S. Dist. LEXIS 60871 (D. Ariz. Apr. 7, 2020), the Court found that hourly rates of $690 (associate) and $890 (lead partner) are "reasonable" and supported by case law. *Id.* at *18, *22. Further, counsel in *ThermoLife* averred that these rates are reasonable and within the range of prevailing market rates, based on his considerable experience in the Phoenix market. *See* Exh. D, *ThermoLife*, No. 18-cv-04189-PHX-JAT (D. Ariz. Jan 24, 2020) Dkt. No. 36-1, Decl. of Cole Schlabach at ¶ 12 (attesting that "[a]s an attorney practicing [] in the Phoenix area I am familiar with the prevailing market rates in Phoenix, Arizona. I have consulted with other attorneys with regard to the prevailing market rates in Phoenix, Arizona, and have reviewed fee applications submitted by various law firms Phoenix, Arizona.").

As another example, the plaintiffs' attorneys in the case of *Smilovits v. First Solar, Inc.*, reported hourly rates ranging from $650 to $1,325 for partners and from $250 to $630 for other attorneys. *See* Exh. E, No. 2:12-cv- 00555 (D. Ariz. Apr. 24, 2020), Dkt. Nos. 718-1, 719. The Court granted the fee application. Exh. F, *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555 (D. Ariz. June 30, 2020), Dkt. No. 731.

Similarly, in the case of *Di Donato v. Insys Therapeutics Inc.*, Phoenix-based attorneys reported rates that were set based in part upon "market rates for practitioners in the field", ranging from $400 to $690 per hour for associate attorneys and $920 per hour for a partner admitted to practice in 1995. *See* Exh. G, No. 16-cv-00302-PHX-NVW (D. Ariz. Sept. 20, 2020), Declaration of Johnston De F. Whitman, Jr., Dkt. No. 411-3 at ¶ 6, Ex. A.

Furthermore, courts have consistently approved the rates charged by Schneider Wallace Cottrell Konecky LLP. *See* Konecky Decl. at ¶ 28 and Exhibits H-X.  Numerous court orders approving Counsel's rates, as recently as this past July, are attached to the Konecky Decl. *Id.*

In addition, Plaintiffs' Counsel are among the leading employment and class action attorneys nationwide. *See id.* at ¶¶ 8-15, Exhs. A & B. This case demanded experienced and

highly competent lawyers, as well as expertise in the complex issues presented.  Counsel's skill and accomplishments, both generally and as demonstrated by the results in this case, justify rates even at the higher end of the market range, particularly given that the multiplier on Plaintiffs' Counsel's lodestar here is significantly lower than multipliers approved in similar cases, as discussed below.

### 3.    A substantial multiplier is warranted

The lodestar may be adjusted upwards based on "several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see also Reid v. I.C. Sys.*, 2018 U.S. Dist. LEXIS 125663, at *13-14 (D. Ariz. July 26, 2018) (Silver, J.) ("…the Court may further increase the figure with a 'multiplier,' to account for factors such as the case's complexity, the risks involved, and whether the case was taken on contingency.").  Other factors include, *inter alia*, the time and labor required; the skill required to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; whether the fee is fixed or contingent; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; and awards in similar cases. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n. 8 (9th Cir. 1996).

Furthermore, "'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.' In common fund cases, 'attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose.'" *Vizcaino*, 290 F.3d at 1051 (internal citations omitted).

Multipliers normally range from two to four or higher. *Jones v. Dominion Res. Servs.*, 601 F.Supp. 2d 756 (W.Va. 2009) ("Courts have generally held that lodestar multipliers between 2 and 4.5 demonstrate a reasonable attorneys' fee"); *Vizcaino*, 290 F.3d at 1051 n.6 (observing that 83% of common fund cases apply a multiplier of 1.0-4.0); *Been v. O.K.*

*Industries, Inc.*, 2011 WL 4478766, at *11 (E.D. Okla. 2011) (citing a study "reporting [an] average multiplier of 3.89 in survey of 1,120 class action cases" and finding that a multiplier of 2.43 would be "per se reasonable").); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier, and observing that "[i]n recent years multipliers of between 3 and 4.5 have become common.").[2]

Plaintiffs' fee request of $4,666,666.67 corresponds to a multiplier of approximately 1.7 on Counsel's lodestar of $2,740,335. This multiplier is on the lower end of the range of multipliers awarded in cases involving common fund settlements, as shown by the cases above.

Further, the highly analogous case of *Browne v. P.A.M. Transp.*, 2020 U.S. Dist. LEXIS 135956, (W.D. Ark. July 31, 2020), which also addressed minimum wage claims based on unpaid "sleeper berth" time, also is instructive.  The fee award in *Browne* was for one-third of the common fund, *id.* at *7, which corresponded to a multiplier of approximately 2.96.[3] The Court reasoned that the fee award was justified because "the case was extremely hard-fought. The litigation stretched over nearly four years and involved extensive motion practice, voluminous discovery, and numerous depositions. It presented novel questions of law. Plaintiffs' counsel proved themselves to be highly skilled and experienced in this particular area of litigation. They took the case on a contingent basis despite a significant risk that they might not prevail or might not be able to collect the judgment in full even if they did prevail. Plaintiffs' counsel also had considerable success on the merits of the case, prevailing in part

---

[2] *See also Rabin v. Concord Assets Group*, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (awarding 4.4 multiplier and observing that "multipliers of between 3 and 4.5 have been common"); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.,* 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018) (multiplier of 4.37 found reasonable); *In re VeriFone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) (multiplier of 4.3 found reasonable); *In re Cadence Design Systems, Inc. Securities and Derivative Litigation*, 2012 U.S. Dist. LEXIS 56785, *17 (N.D. Cal. April 23, 2012) (finding multiplier of 2.88 to be reasonable); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *9 (N.D. Cal. Dec. 6, 2017), *appeal filed* January 11, 2018 (finding multiplier of 3.66 to be "well within the range of awards in other cases.").

[3] Exh. Y, *Browne v. P.A.M. Transp.*, No. 5:16-CV-5366 (W.D. Ark.), Brief in support of fee motion (Dkt. 298) at p. 27 (reporting lodestar of $1,856,050 and seeking multiplier of 2.96).

---

on a motion for summary judgment before reaching a settlement on the Friday before the trial was to begin." *Browne*, 2020 U.S. Dist. LEXIS 135956, at *7.

The litigation history here presents an even more compelling justification for a substantial multiplier than in *Browne*. Indeed, this hotly contested case settled mere weeks before trial, and only after nearly five years of litigation, including numerous motions and depositions, and extensive discovery and trial preparation. It also presented novel questions of law and an array of complicated questions of fact.  In addition, Plaintiffs' Counsel had considerable success on the merits, having achieved a key victory on summary judgment and a substantial award of damages before trial.  Further, as discussed in Section III.C.1, *supra*, the recovery in the instant settlement is superior to that achieved in *Browne*, on a workweek-by-workweek basis. Yet, Plaintiffs' common fund fee request corresponds to a multiplier of approximately 1.7, which just 57% of the multiplier approved in *Browne*.

In the end, the multiplier here is fully justified, for the same reasons that an upward adjustment from the 25% benchmark is warranted: Counsel's skilled advocacy produced an exceptional result in what was a decidedly complex and risky case that Counsel took on a contingency basis. *See* Section III.C, *supra*; *cf. Reid*, 2018 U.S. Dist. LEXIS 125663, at *14-15 (Silver, J.) (reasoning that 1.75 multiplier was justified "in light of the complexities and risk associated with this litigation, and the fact that Plaintiff's counsel performed this work on a contingency basis and completed some significant motion practice.").

Accordingly, this cross-check demonstrates the propriety of the requested fee.

### E.  Plaintiffs' requested cost reimbursements are reasonable

Plaintiffs' Counsel are entitled to recover the out-of-pocket costs and litigation expenses they reasonably incurred in investigating, prosecuting, and resolving the case. *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D. Cal. 1996); *see also* 29 U.S.C. § 216(b); Fed. R. Civ. P. 54(d)(1) ("Costs Other Than Attorney's Fees"); Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and *related nontaxable expenses*….") (emphasis added)). Even though not normally taxable as costs, out-of-pocket expenses incurred by an attorney which would normally be charged to a fee-paying

client are recoverable as attorneys' fees. *Chalmers v. City of L.A.*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986), amended by 808 F.2d 1373 (9th Cir. 1987). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable [in FLSA actions]." *Morales*, 2013 WL 1704722, at *7.

Here, as set forth in the accompanying Konecky Declaration, Plaintiffs' reimbursable out-of-pocket expenses include the following: (1) travel expenses; (2) document production expenses (*e.g.*, scanning, bates numbering, OCR, hosting, *etc.*); (3) deposition fees and transcripts; (4) postage; (5) filing and miscellaneous fees; (6) copying and printing; (7) computer legal research; (8) delivery and freight; (9) expert witness fees; and (10) the previous 216(b) opt-in notice administration. This case was costly to litigate over the nearly 5 years it was pending.  The largest cost was the previous opt-in notice administration, which was reasonable and necessary because it notified thousands of current and former Swift trainee truck drivers of this case by mail, email and text message, and gave these individuals the opportunity to join. Konecky Decl. at ¶ 100.  Another substantial cost was expert witness fees, which were critical to Plaintiffs' success on the motion for damages and in evaluating Swift's exposure during the settlement negotiations. *Id*. at ¶ 101.

The total reimbursable costs incurred in this case amount to $308,153.88.  *Id*. at ¶ 95, Exh. C (item-by-item listing of costs).  These costs were reasonable and necessary to the successful prosecution of the case, and are customarily billed to fee-paying clients.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs' motion should be granted in its entirety.

Dated:  September 18, 2020                    Respectfully submitted,

SCHNEIDER WALLACE
COTTRELL KONECKY LLP

By:    /s/ *Joshua G. Konecky*
       Joshua G. Konecky
       Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2020, I electronically filed the foregoing document with The Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

Dated:  September 18, 2020          */s/ Joshua G. Konecky*
                                     Joshua G. Konecky
                                     SCHNEIDER WALLACE
                                     COTTRELL KONECKY LLP