**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Julian, | No. CV-16-00576-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Swift Transportation Company Incorporated, et al., | |
| Defendants. | |

Plaintiffs seek approval of the parties' proposed settlement agreement, an award of attorneys' fees, and a "service award" to the named Plaintiff, Pamela Julian. While the settlement agreement will be approved and a service award allowed, the amount requested in attorneys' fees is too high. Instead of the 33% of the common fund requested by counsel, the Court will award 25%.

## BACKGROUND

Plaintiff filed this suit in December 2015. Over the following five years, the parties vigorously contested almost every aspect of this case. The parties briefed, and the Court resolved, a motion for conditional certification, multiple rounds of summary judgment, a motion regarding damages, and a motion for interlocutory appeal. The parties also prepared and filed all the required pretrial documents. Over the course of those proceedings, this case presented a variety of complex and difficult issues, requiring multiple Court rulings on issues with very little governing authority. Thus, the Court is intimately familiar with the claims and defenses in this case. In particular, the Court knows

the strengths and weaknesses of both the claims it already resolved as well as the claims that were set to be resolved at trial. While the Court remains confident in the correctness of its rulings, Swift had substantial arguments to pursue on appeal. And given Swift's vigorous opposition to every aspect of this case, extended appellate proceedings were inevitable.

In August 2020, the parties participated in a full-day mediation. While the case did not settle that day, the parties reached an agreement shortly thereafter. The proposed settlement requires Swift pay $14 million plus a relatively small amount in payroll taxes. Plaintiffs' counsel seeks an award of 33% of the $14 million in attorneys' fees as well as over $300,000 in costs. Named Plaintiff seeks a "service award" of $15,000, while the settlement administrator would receive $116,776. And each of the 9,578 plaintiffs who joined this suit would receive an equal amount. The amount received by each plaintiff would be treated as 1/3 wages, 1/3 liquidated damages and penalties, and 1/3 interest. Swift would pay the additional employer-side payroll taxes due on the portion identified as wages. Payments would be sent to Plaintiffs automatically, meaning they would not be required to submit a claim. In the event some checks are never cashed, the remaining amount would be distributed to The University of Arizona James Rogers College of Law Workers' Rights Clinic.

Using Plaintiffs' figures, counsel would be awarded $4,666,666.67 in attorneys' fees and $308,153.88 in costs. After deducting those fees and costs, as well as the costs of administering the settlement and the named Plaintiff's service award, there would be $8,893,403.45 to divide among Plaintiffs. Thus, each plaintiff would receive approximately $928. (Doc. 282-1 at 11-12). Because this litigation involves the approximate six-week period Plaintiffs spent in training, that amount would mean each Plaintiff would receive approximately $145 per workweek. (Doc. 282-1 at 12-13).

## ANALYSIS

**I. Approval of Settlement**

In general, an FLSA settlement may be approved if "the settlement is a fair and

reasonable resolution of a bona fide dispute." *Kerzich v. Cty. of Tuolumne*, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018). The requirement of there being a "bona fide dispute" recognizes a settlement cannot be approved if "there is certainty that the FLSA entitles plaintiffs to the compensation they seek." *Id.* Here, there is a bona fide dispute regarding the amount, if any, Plaintiffs are entitled to receive. While the Court has already found Swift liable for certain portions of Plaintiffs' claims, Swift has plausible arguments to pursue on appeal regarding that liability. Swift also has plausible defenses to the remaining claims if this case were to proceed to trial. Accordingly, there is a "bona fide dispute" between the parties regarding Swift's liability. The more important question, therefore, is whether the proposed settlement qualifies as "fair and reasonable."

When assessing the fairness of an FLSA settlement, district courts often look to the factors applicable to assessing Rule 23 class actions settlements. Those factors are:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Kerzich v. Cty. of Tuolumne*, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018). The importance of these factors varies from case to case and the Court's ultimate responsibility is to ensure "the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.*

Here, Plaintiffs have already prevailed on certain claims and there was a substantial likelihood they would prevail at trial on the remaining claims. However, it was also possible the trial would reveal Plaintiffs could not proceed on a collective basis. If that occurred, it was possible the Court would have to conduct thousands of individual proceedings. And regardless of the outcome at the scheduled trial, Swift had arguments it planned to pursue on appeal. Thus, any non-settlement recovery by Plaintiffs would be delayed for years, and come only after additional expenditures. These factors support allowing the parties to resolve their dispute now.

Turning to the amount offered in settlement, $14 million compares favorably to the total liability at stake. Plaintiffs' counsel calculated Swift's maximum possible liability as $51,024,830. (Doc. 282-1 at 17). That figure represents a complete victory by Plaintiffs on all claims ($23,179,082), an award of liquidated damages of the same amount, and $4,666,666 in attorneys' fees. Using the $51,024,830 figure, the settlement represents 27% of Swift's maximum liability. If liquidated damages are excluded, the total settlement of $14 million represents 50% of Swift's potential liability of $27,845,748. One of Plaintiffs' counsel represents that "based on [his] experience and judgment, the final settlement amount compares very favorably with Plaintiff's estimates of Swift's realistic, and even best-case, exposure." (Doc. 282-1 at 17). The Court agrees that the total settlement amount is generous considering Swift's possible liability, discounted by Plaintiffs' likelihood of success.[1]

The Court also notes that none of the $14 million will be returned to Swift in the event some Plaintiffs do not cash their checks. Instead, any remaining amount will be sent to the University of Arizona James Rogers College of Law Workers' Rights Clinic. That clinic is dedicated to supporting the rights of low-wage workers. Thus, the FLSA and the clinic share a similar purpose. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) ("The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours."). And the individuals who would benefit from the law clinic's services are similarly situated to Plaintiffs. Therefore, the requirements for a *cy pres* award are met. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) ("A *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must not benefit a group too remote from the plaintiff class.").

Based on the entire history of this case, and the Court's familiarity with the claims,

---

[1] Assuming no liquidated damages were awarded, each of the 9,578 plaintiffs would receive approximately $2,420 ($23,179,082 divided by 9,578). Under the proposed settlement, each plaintiff will receive approximately $928. Considering Plaintiffs' likelihood of success and the certain delay even if Plaintiffs prevailed at trial, $928 is a favorable outcome for Plaintiffs.

defenses, and remaining arguments, the total settlement of $14 million is fair and reasonable.

## II. Service Award

Plaintiff Pamela Julian requests a $15,000 service award. Service awards "are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Ms. Julian is responsible for initiating this litigation as she contacted counsel to complain she had been denied minimum wage. Ms. Julian then participated in discovery, traveled to Phoenix for her deposition, and remained in contact with counsel throughout the entirety of this case. A service award is appropriate and the size of that award is reasonable in light of the total amount recovered as well as the amount other collective members will receive. *See Quintana v. HealthPlanOne LLC*, No. CV-18-02169-PHX-RM, 2019 WL 3342339, at *6 (D. Ariz. July 25, 2019) (approving service award of $6,000 from settlement worth $447,500.00).

## III. Attorneys' Fees

Where, as here, "a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Under the percentage-of-recovery method, the "benchmark" is 25% which can be adjusted up or down if there are "special circumstances." *Id.* Those circumstances include whether exceptional results were obtained, whether the case was "risky" for counsel to pursue, any benefits beyond monetary relief obtained, and the burden on counsel's ability to accept other work. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Finally, comparing the percentage requested by counsel to the lodestar "may provide a useful perspective on the reasonableness of" the award counsel seeks. *Id.*

Plaintiffs' counsel seek an award of 33.33% ($4,666,666) of the total settlement.

Counsel explain this case required considerable skill and thousands of hours of work. Counsel also claim the result is very favorable and they had to forgo other work to pursue this matter. Finally, counsel compares the amount requested to the lodestar, which they calculate as approximately $2,740,335.75. Thus, counsel's request represents a multiplier of approximately 1.7, which they deem reasonable given the contingent nature of this case.

There is little doubt counsel obtained a positive result after years of work. Counsel also litigated this case despite a legitimate risk that Swift would prevail on all claims. Counsel also had to forgo other opportunities to devote time to this case. In these circumstances, there is no basis to reduce the 25% benchmark. However, an increase beyond that benchmark is not appropriate. Using counsel's calculation of the lodestar as $2.7 million, an award of 25% of the common fund ($3.5 million) would be substantially more than the lodestar. Crucially, however, counsel's lodestar is inflated.

According to counsel, most of the work in this case was performed by a "sixth-year associate." (Doc. 283-1 at 5). That attorney's hourly rate is $680. Other associates who performed work had hourly rates of $550, $625, $680, and $775. The partner who worked on this case had an hourly rate of $925. And the "law clerks" who worked on this case had hourly rates of $300 and $350, with paralegals billing at $250, $300, and $350. These rates are not consistent with rates in the Phoenix market for legal work of this type.

Reasonable hourly rates are determined by looking to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). Therefore, the relevant comparison is the hourly rate in the Phoenix market for FLSA litigation. Counsel's comparison to the rates awarded in securities litigation or unfair competition cases are minimally useful. (Doc. 283-1 at 11).

In recent FLSA suits, the District of Arizona has awarded hourly rates of $325 for attorneys with six or seven years of experience. *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 486 (D. Ariz. 2019) ($325 for attorney with seven years of experience); *Outland v. Arizona Movers & Storage*, No. CV-18-01370-PHX-RCC, 2019 WL 2269423,

at *1 (D. Ariz. May 28, 2019) ($325 for attorneys with three and six years of experience). The present case is substantially more complicated than those cases but the present case does not support almost doubling the reasonable hourly rates. In addition, comparing the present suit to another suit the Court is currently handling establishes counsel's rates are not in line with the Phoenix Market, even for a complicated case. In a constitutional class action that was markedly more complex than the present case, the plaintiffs are seeking rates of $630 for "partners and lead counsel" and $390 for senior associates. (CV-15-185, Doc. 529-3 at 9). Finally, the Court notes that according to the 2019 Arizona Lawyers Report on Economics of Practice, the average hourly rate for an Arizona attorney with 5-9 years of experience is $288. The highest average hourly rate is $340, representing those with 30 or more years of experience. *See Bray v. Maxwell & Morgan PC*, No. CV-17-00486-PHX-DGC, 2017 WL 5668269, at *2 (D. Ariz. Nov. 27, 2017) (referring to 2016 report).

Returning to the hourly rates at issue in this case, hourly rates of $680 for a sixth-year associate, $925 for a partner, and $350 for a paralegal are excessive considering the market rates for FLSA cases in Phoenix. If the Court were to calculate the lodestar in the present case, it likely would be at least one-third less than counsel's calculation, *i.e.* approximately $1.8 million. Therefore, awarding the benchmark of 25%, or $3.5 million, represents close to a double multiplier of the correct lodestar. Doubling the lodestar is sufficient compensation to account for counsel accepting this case on a contingency basis. *See Bailey v. Kinder Morgan G.P., Inc.*, No. 18-CV-03424-TSH, 2020 WL 5748721, at *7 (N.D. Cal. Sept. 25, 2020) (awarding 1.54 multiplier and citing cases awarding multipliers of 1.49, 1.37, 2.26, and 3.36). Awarding counsel their requested 33%, or $4.6 million, would be approaching a triple multiplier. While the results obtained on behalf of the collective are impressive, and counsel exercised considerable skill in obtaining those results, a triple multiplier would be excessive. An award of 25% is ample to compensate counsel for their efforts.

Accordingly,

**IT IS ORDERED** the Motion for Approval of Settlement (Doc. 282) is **GRANTED**. The parties shall comply with and implement the Settlement Agreement attached as Exhibit 1 to the Declaration of Nathan Piller in Support of the Motion for Approval of Collective Action Settlement. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of the Settlement Agreement or this Order.

**IT IS FURTHER ORDERED** Heffler Claims Group LLC is appointed as Settlement Administrator and is entitled to payment of the estimated costs of settlement administration from the Gross Settlement Amount.

**IT IS FURTHER ORDERED** the Motion for Attorney Fees (Doc. 283) is **GRANTED IN PART**. Plaintiffs' counsel are entitled to 25% of the Gross Settlement Amount plus reimbursement of actual out of pocket costs of $308,153.88.

**IT IS FURTHER ORDERED** Motion for Service Award (Doc. 284) is **GRANTED**. Plaintiff Pamela Julian is entitled to a service award of $15,000 out of the Gross Settlement Amount.

**IT IS FURTHER ORDERED** the Clerk of Court shall enter a judgment of dismissal with prejudice.

Dated this 13th day of October, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge